## THE HARBINGER.[1]

## BROWN v. GILL & FISHER, Limited.

*(District Court, E. D. Pennsylvania.  May 10, 1892.)*

1. **CHARTER PARTY—CONSTRUCTION—"CONVENIENT SPEED."**
    A charter party made November 5th with a ship at Charleston, S. C., actively engaged in trading, by which she was required to proceed to Philadelphia with all convenient speed, and to be in readiness for cargo after December 31st, with the privilege to the shippers to cancel the charter if she "shall not be ready on or before the 31st of January" following, is complied with if the ship be in readiness by January 31st, although she undertake another voyage, and puts in for ordinary repairs in the interval.

2. **SAME—READINESS FOR CARGO—SUNDAY.**
    The tender of a ship to a charterer on the Monday following the Sunday which would be, by the terms of the charter party, the last day for such tender, is in time, in the absence of some controlling custom of the port to the contrary.

3. **CUSTOM OF PORT.**
    There is no custom of the port of Philadelphia requiring that, where the last day that a ship could be in readiness falls on Sunday, she should present herself on the previous Saturday.

4. **SAME—EVIDENCE.**
    A custom is not shown to be established at the port, where the testimony of the witnesses who aver that the custom exists is met by an almost equal number of witnesses with equal facilities of knowing, who testify to never having heard of such custom.

In Admiralty.  Libel by John L. Brown, owner of the steamship Harbinger, against Gill & Fisher, limited, to recover for breach of contract of charter party.  Decree for libelant.

*Flanders & Pugh*, for libelant.
*Richard C. McMurtrie*, for respondents.

BUTLER, District Judge.  The respondents chartered the British steamship Harbinger on November 5, 1891, to carry a cargo of grain from Philadelphia to Cork, for orders, at the rate of four shillings and nine pence a quarter.  The charter contains the provisions usual in such instruments.  Fifteen lay days are allowed for loading,—not to commence running before the 1st of January, 1892.  It is stipulated that the ship shall proceed "with all convenient speed to Philadelphia," and load; and that if she "shall not be ready to load on or before the 31st" of that month the charterers may refuse her.  She was at Charleston when chartered, and on the 23d of November, after loading a cargo of cotton, started for Bremerhaven, where she arrived about the 17th of December.  Seven days thereafter, having discharged the cotton, she went to the river Tyne, England, for repairs, (required by usual wear,) reaching there in two days, and remaining ten or twelve, until the work was done.  She then started for Philadelphia, getting here on the 31st of January, which was Sunday.  She found the customhouse closed, and was unable to secure the usual certificates of readiness for cargo, on that day; but she nevertheless tendered her-

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

self to the respondents in the afternoon. Next morning she entered, procured the certificates and again tendered herself; but was refused, and notified that the charter was canceled.

The defense urged is twofold: *First*, that the libelant failed to observe the stipulation to proceed with all convenient speed to Philadelphia; and, *second*, that the ship was not ready to load on or before the 31st of January.

In passing upon the first point, it is necessary to ascertain what duty (in this respect) the contract imposed. In ascertaining this the clause referred to must not be detached and read alone, but the entire charter taken, and considered in the light of surrounding circumstances. While it is provided that the ship being tight, and having liberty to take an outward cargo for the owner's benefit, shall "proceed with all convenient speed to Philadelphia * * * and there load," it is clear that the literal sense of this language does not express the intention of the parties. The cargo was not to be ready until nearly two months thereafter; the lay days, as we have seen, were not to commence before the 1st of January, 1892. If therefore she was to proceed directly "with all convenient speed to Philadelphia" she must lie there in idleness for six weeks or more. Of course the parties did not intend this. What then did they intend? She was at Charleston, and, as the charter states, was engaged in "trading." She was to carry a cargo of grain from Philadelphia not earlier than the 1st of January and not later than t`.e last. In other words, she was chartered for a January shipment, from that port. She was not required therefore " to proceed with all convenient speed " directly from Charleston to Philadelphia. It was contemplated that she would continue trading elsewhere, during the months of November and December, and then proceed to Philadelphia with "all convenient speed" consistent with the circumstances contemplated. The contract was made for her benefit as well as for the respondents.' During the intervening months she must carry such cargo as can be obtained. She cannot choose her voyages, but must accept such as offer. If these carry her so far off that she cannot reach Philadelphia until late in January the respondents cannot complain. If she shall not reach there until the time stipulated for loading has passed, she forfeits her charter. Such, in my judgment, is the proper interpretation of the contract.

In this view of the libelant's obligations, the first point of the defense fails. As we have seen the ship took cotton abroad from Charleston; and appears to have returned as speedily as could be expected. She was delayed for necessary repairs. She was not blamable for taking the cargo to Bremerhaven. It does not appear that there was any needless delay in loading, or unloading, in making the repairs, or in going or returning. Doubtless she could (with unusual effort) have made greater speed; but the charter required "convenient speed" only, and this she made. It is unnecessary to inquire, in this view of the facts, whether the stipulation respecting speed, constitutes a condition precedent.

Then as respects the second point,—was she ready to load within the time specified? The effect of her tender on Sunday need not be consid-

ered. Her readiness next morning is admitted; and it is indisputable that this was in time, according to the general rule of law applicable to such cases. *Campbell* v. *Society*, 4 Bosw. 298; *Salter* v. *Burt*, 20 Wend. 205; *Avery* v. *Stewart*, 2 Conn. 69; *Chaffee* v. *Railroad Co.*, 146 Mass. 224, [16 N. E. Rep. 34.] The 31st being *dies non* she was entitled to Monday; unless the custom of this port required her to be ready on the preceding Saturday. There is no room to doubt that the existence of such a custom would control the charter,—that the parties would be regarded as dealing with it in mind, and be required to conform to it. But to exercise such an influence the custom must be uniform and so long continued as to be notorious. As said in *Coxe* v. *Heisley*, 19 Pa. St. 247, a local usage if it be ancient, uniform, notorious and reasonable, may enter into and become part of a contract which is to be executed at the place where the usage prevails." All these elements are essential constituents of a binding custom.

The respondents set up such a custom, respecting shipments at this port; and have produced some evidence on the subject. The evidence is insufficient, however, to sustain their position. Nearly an equal number of witnesses, with equal opportunities of knowledge, are produced on the other side, who say no such custom exists,—that they never even heard of it. On both sides the witnesses are men of high character, and entirely worthy of credit. They testify according to their respective understandings. It appears that the Commercial Exchange of Philadelphia has provided by rule (which binds its members only) for the performance of mercantile contracts on Saturday when the time named therein for performance occurs on Sunday; and in consequence a partial usage of this nature, respecting such contracts, exists. This may have led to the understanding stated by the respondents' witnesses. It is clear, however, that the custom, set up respecting shipments at this port, is not proved. It is incredible that a uniform, long-established, notorious custom,—of which every one dealing here in respect to such shipments is presumed to have knowledge, and is consequently bound by,—should exist, and the libelant's witnesses,—shippers, ship brokers, and others, be ignorant of it. It is manifest that the respondents (who from their experience as shippers should have known of the custom if it exists) had never heard of it before this suit was brought, for instead of setting it up in their answer, the defense there stated, rests on different grounds. The answer, indeed, substantially admits that the tender on Sunday would have been in time if it had been accompanied by the usual certificates of readiness.

The libel is sustained and a decree may be prepared accordingly.