ONE THOUSAND BAGS OF SUGAR v. HARRISON.

(Circuit Court of Appeals, Third Circuit. January 10, 1893.)

No. 12.

1. CHARTER PARTY—CONSTRUCTION—PRINTED FORMS.
Matter expunged from a printed form used in drawing up a charter party may be considered in determining the intention of the parties. 50 Fed. Rep. 116, affirmed.

**2. Same—Freight.**

In making a contract for the transportation of a full cargo of sugar, the parties used a printed form containing this provision: "The freight to be paid on the unloading and right delivery of a cargo of sugar at and after the rate of nine shillings sterling per ton of twenty hundredweight delivered." The printed word "delivered" was struck out, and the words "on intake weight" were interlined in writing. *Held,* that the charterer was bound to pay freight on the whole cargo taken aboard, although part of it was damaged without the ship's fault by an excepted peril, and sold on the voyage. Dallas, J., dissenting. 50 Fed. Rep. 116, affirmed.

Appeal from the United States Circuit Court for the Eastern District of Pennsylvania.

Libel in rem by James W. Harrison, master of the steamship Wetherby, against 1,000 bags of sugar, (Claus Spreckels, claimant,) to recover freight. In the district court a decree was rendered for libelant. 44 Fed. Rep. 686. On appeal by the claimant this decree was affirmed in the circuit court. 50 Fed. Rep. 116. From the latter decree, claimant appeals. Affirmed.

Morton P. Henry, for appellant.
Curtis Tilton, for appellee.

Before DALLAS, Circuit Judge, and WALES and GREEN, District Judges.

WALES, District Judge. This is an appeal from the United States circuit court for the eastern district of Pennsylvania, affirming the decree of the United States district court for the same district, for the full amount of the libelant's claim, which was for freight on a cargo of sugar shipped at Hamburg, and to be discharged at the port of Philadelphia, to the order of Claus Spreckels, the appellant. The case was heard in each court on libel and answer. The finding of facts by the circuit court is as follows:

"(1) This action was brought to recover the freight on 14,515 bags of sugar, part of the cargo of the steamship Wetherby, shipped at Hamburg for Philadelphia, which was sold by the master at Hamburg.

"(2) The whole cargo, consisting of approximately 25,000 bags, belonged to Mr. Claus Spreckels, the claimant, and was shipped under a charter party, executed on his behalf, for a full cargo from Hamburg to Philadelphia, of which only 10,489 bags were landed and delivered at Philadelphia.

"(3) In making the contract the parties used the ordinary form of a freighting charter party for the full capacity of the vessel, the printed clause for the payment of freight reading thus: 'The freight to be paid on the unloading and right delivery of the cargo at and after the rate of nine shillings sterling per ton of twenty hundredweight delivered.' The printed word 'delivered' was struck out by running the pen through it, and the words 'on intake weight' were interlined in writing so that the completed clause reads: 'The freight to be paid on unloading and right delivery of the cargo, at and after the rate of nine shillings per ton of twenty hundredweight on intake weight.'

"(4) The Wetherby returned to Hamburg in consequence of damage sustained by a collision with the steamer Sultan in the river Elbe, without fault on the part of the Wetherby. The Sultan admitted full liability in proceedings taken in England to limit the liability of the owners of that vessel.

"In consequence of injury to the cargo, caused by the collision, the master sold 14,515 bags of sugar at Hamburg, under the recommendation of a survey, regularly made, as unfit for transportation, to protect the interest of the cargo owner. On arrival at Philadelphia the vessel delivered to Mr. Spreckels 10,849 bags of sugar, the remaining part of the cargo unsold, who paid

freight thereon at charter party rates, $2,227.25. He declined to pay the freight on the cargo sold and not delivered, amounting to $3,229."

If the interlineation of the, words "intake weight" had been the only alteration made in the printed form of the charter party, no difference of opinion as to the construction of the contract would exist between the parties to it, and the present litigation would have been avoided. But the striking out of the word "delivered" opens up the question of whether freight was to be payable on the whole intake weight of the cargo which was shipped at Hamburg, or only on the intake weight of that portion of the cargo which was discharged at Philadelphia. In Strickland v. Maxwell, 2 Cromp. & M. 549, the printed form of an instrument executed by the parties had been altered in such manner, by an erasure, as to change a lease from year to year to a term of one year only, and it was held by the court that the words struck out might be looked at by the court to ascertain the real intention of the parties in so erasing them; and that other stipulations, inapplicable to a term of one year, should be considered as also struck out, or as surplusage.

What, then, was the intention of the parties to the present suit in canceling the word "delivered?" It will not meet the difficulty by saying that the contract bears the same meaning after as it did before the erasure, or to conjecture that the parties meant nothing at all by the cancellation. The general rules governing the payment of freight are that, in the absence of special agreement to the contrary, freight is payable only on such portion of the cargo which is actually discharged, and that, if the weight or measurements at the loading port and the port of delivery differ, the lowest weight is to be taken in calculating the freight. The contention of the appellant is that, under the operation of these rules, he is not liable for freight on the sugar not delivered, on the ground that the alteration of the printed form had no other purpose than to stipulate for the payment of freight on the intake weight of such part of the cargo as should arrive at the port of Philadelphia. His counsel misapprehends the opinion of the court below when he says that it decides "that, whenever the shipper undertakes to pay freight on the intake weight, he thereby stipulates to pay freight whether the cargo arrives in safety or not, provided that it is not lost by the default of the shipowner." On the contrary, the learned judge who delivered that opinion was careful to say that he could "come to no other conclusion than that the printed clause as originally framed was intended to limit the payment of the freight to so much of the cargo as might be delivered. This, indeed, was the plain effect of the word 'delivered' in the connection in which it stood. Why, then, was it stricken out, unless the parties intended that the freight should be paid on the intake weight of the whole cargo? The suggestion that the purpose of the alteration was simply to meet any discrepancy (if such there should be) between the shipping and delivery weights, and to secure to the ship-owner freight calculated on the intake weight at Hamburg, seems to rest upon a conjecture which is unsupported by any fact. Clearly that purpose did not require the erasure of the word 'delivered.'" We are not to suppose that the parties acted in-

advertently, or without design, in making the erasure; and it has been ingeniously suggested by appellant's counsel that, if the word "delivered" had been allowed to remain after writing "intake weight," it would have made the passage an obscure one, and raised a doubt whether the word "delivered" did not control the words "intake weight," when the meaning was that the freight should be estimated on the intake weight of the parcel delivered, without regard to loss of weight during the voyage. But it has already been made manifest that whatever obscurity of meaning there may be has been caused by the erasure, and that, if there had been no erasure, there would be no obscurity. The case of Spaight v. Farnworth, 5 Q. B. Div. 115, furnishes an apt illustration on this point. There the charter party contained the stipulation: "Freight payable on deals and sawn lumber, on the intake measure of the quantity delivered." The various pieces had been measured by the shipper at the port of shipment, and their dimensions entered in a specification; the measurement figures being before shipment, chalked on each piece respectively. During the voyage to the port of delivery a number of the pieces were lost, and the figures on some of the remaining pieces had been obliterated. It was admitted that freight was payable only on that portion of the cargo actually discharged, and the contention was over the mode of getting at the measurement of the pieces from which the figures had disappeared. In that case the retention of the word "delivered" in the stipulation for freight prevented the very dispute which has arisen here.

Again, it is insisted on behalf of the appellant that the words, "freight to be paid on unloading and right delivery of the cargo," limit the payment of freight to the portion of the cargo delivered. It is well settled, however, that where there is an agreement for the payment of a lump sum for freight, and the whole cargo has been delivered, excepting that part of it which has been lost by an excepted peril of the sea, without default on the part of the master or crew, the condition of "right delivery" is complied with. In Robinson v. Knights, L. R. 8 C. P. 465, a charter party provided that the ship should load a full and complete cargo of lath wood, and deliver the same on being paid freight as follows,—a lump sum of £315. There was the usual exception of sea risks, and it was stipulated that the freight should be paid in cash, half on arrival, and the remainder "on unloading and right delivery of the cargo." The ship meeting with rough weather, the deck load was washed overboard, and lost, without any default of the master or crew. The freighter, on delivery of the cargo, claimed to deduct from the lump sum an amount proportionate to the freight on the deck load which had been lost; but the court held that where there is an agreement for a lump freight, the shipowner is entitled to be paid the whole of it, although a portion of the cargo be lost without default on his part. In Shipping Co. v. Armitage, L. R. 9 Q. B. 99, on a similar state of facts, and involving the interpretation of the words "right delivery," in connection with an agreement for the payment of a lump sum for freight, the court, after an elaborate discussion, reached the same conclusion which had been arrived at in Robinson v. Knights. In each

of these cases the objection was made that the whole of the lump sum agreed upon was made payable only on true and final delivery of the cargo at the port of discharge, and it was decided that "right delivery" meant the delivery of the whole of the cargo which was not lost by an excepted peril.

We are not unmindful of the distinction attempted to be drawn between a charter party which stipulates for the payment of a lump sum for freight, or a round sum for the use of a vessel on a particular voyage, and a contract for the payment of freight on the intake weight of cargo at the port of shipment. The conditions on which payment is to be made is the same in principle in each case, and both fall within the rule established by the two authorities last cited. In the place of a stipulation for the payment of a lump or round sum for the use or hire of his ship, the master of the Wetherby was to be paid at the rate of so many shillings a ton on the quantity of sugar taken on board, more or less, which was only another mode of ascertaining, in advance of the sailing of the ship, the sum he should receive at the end of the voyage. By striking out the word "delivered," as it originally stood in the charter party, the contract between the parties was converted into an agreement substantially like an agreement for the payment of a lump sum, and on the right delivery of the undamaged portion of the cargo the libelant and appellee became entitled to freight on the whole of the intake weight of the sugar. The decree of the circuit court is therefore affirmed.

DALLAS, Circuit Judge, (dissenting.) As I am unable to concur in the opinion of the court, it is proper that I should indicate the grounds of my dissent, but I will endeavor to do so briefly, and without unnecessary amplification. The sole question, as I view this case, is as to the correct construction of that portion of a contract of charter-party which is in these words:

"The freight to be paid on unloading and right delivery of the cargo at and after the rate of nine shillings sterling per ton of twenty hundredweight on intake weight."

This clause constituted the agreement with respect to "the freight to be paid." It embraces two incidents of an undertaking for payment of freight. It provides—First, when the freight shall be paid, and on what cargo; and, second, the rate per ton at which it shall be paid, and upon what weight. These two subjects are distinct. They may be separately contemplated. The language quoted does not confound them. As to each of them the legal effect of that language is plain and beyond question. It is that—First, freight was to be demandable at the time of delivery, and only on cargo delivered at the port of delivery; and, second, the amount to be paid (upon cargo so delivered) was to be determined at the designated rate per ton, with reference to weight at the port of shipment, and not elsewhere.

It is suggested, however, that this clause stands in need of construction, although the words employed do not require interpretation, because a certain word which presented itself to the attention

of the draughtsman was not used, but was obviously rejected. In the preparation of the charter party a prin.. d form was used, which contained this language:

"The freight to be paid on unloading and right c livery of the cargo at and after the rate of nine shillings sterling per ton of twenty hundredweight delivered."

This was altered by erasing with a pen the concluding word, "delivered," and by inserting above that erasure the words "on intake weight." That, as a result of this, the port of departure was made the place for ascertainment of weight, is agreed; but that this alteration, made as it was made, also effected an in ersion of the rule of law (with which the clause, as it stands, accords) that freight, no matter upon what weight to be calculated, is to be paid only upon cargo delivered, I cannot discern. It is not claimed that the latter consequence would accrue from the mere insertion of the words "on intake weight;" but it is supposed to arise from, and wholly from, the erasure of the word "delivered." Surely the correctness of this supposition is dependent upon the intent with which the erasure was made. We have no evidence or knowledge of that, and, in my opinion, we are not at liberty to indulge in speculation about it. Where construction of a contract is requisite, the circumstances of the case are to be regarded; but to attribute to parties, from a circumstance such as we have here, a purpose in direct conflict with that actually expressed, is, in my judgment, not to construe an ambiguous contract, but to substitute conjecture for a perfectly plain one. I cannot, however, perceive any good reason for assuming (were assumption permissible) that cargo, as well as weight, was intended to be affected by the alteration. The erasure and the interlineation were evidently made at one and the same time. They constituted a single continuous act. It is admitted that the interlineation relates solely to weight; and I think it much more likely that, in making the complete change,—as a totality,—one subject only was in mind, than that two distinct matters were simultaneously in contemplation. It may be that the word "delivered," if retained, would not have been, even seemingly, discrepant with the interlineation; but this is not unquestionable, and it is, at least, quite possible—I think, even probable —that the draughtsman supposed that to make the interlineation nicely accurate, the underlying word should be omitted. On the other hand, it is to be presumed that these parties were familiar with the subjects about which they were contracting; and, being so, it is scarcely conceivable that they believed that by striking out this single word, which, if it related to cargo, was manifestly superfluous,[1] they were also imparting to those which remained the noninherent and important effect of eluding the operation of a rule of law so long established and acquiesced in that, probably in fact as well as in legal presumption, they had full knowledge of it. The general rule referred to is that in case of a sale of cargo, as in this instance, in the

---

[1] When an alteration, though made after execution, leaves the legal effect of the contract unchanged, that effect is not annulled. Tayl. Ev. (Bl. Pub. Co. 1887,) § 1822; Robertson v. Hay, 91 Pa. St. 242, (247.)

course of a voyage, no freight, with respect to the cargo sold, is recoverable. Vlierboom v. Chapman, 13 Mees. & W. 230; Hurtin v. Insurance Co., 1 Wash. C. C. 530; Armroyd v. Insurance Co., 3 Bin. 437; Callender v. Insurance Co., 5 Bin. 525; Richardson v. Young, 38 Pa. St. 169. I think that, if the intention alleged had existed, it would now be discoverable without recourse to a dubious inference from an equivocal act. It would, I believe, have been manifested, as it might readily have been, by some appropriate and sufficient alteration of the form which was used. For instance, that form might, by a slight additional alteration, have been made to read thus:

"The freight to be paid on unloading and right delivery of the cargo, and on all cargo shipped, whether delivered or not, at and after the rate of nine shillings per ton of twenty hundredweight on intake weight."

No such simple change as is here suggested was made. On the contrary, there being solely in view, as I am convinced, the single and separate question of the weight upon which freight was to be estimated, no design was indicated to make any peculiar provision with respect to the cargo upon which it was to be paid. True, the word "delivered" was struck out; but, as I have said, the draughtsman may have supposed that word to relate to weight, and I am by no means satisfied that, if he did, he was not right. As has been pointed out, the first part of the clause, as printed, sufficiently stipulated, under the law, for payment only on cargo delivered, viz. "the freight to be paid on unloading and right delivery of the cargo." In what follows the rate and weight to be employed in calculating the amount to be paid are exclusively dealt with, viz. "at and after the rate of nine shillings sterling per ton of twenty hundredweight delivered." What delivered? Not cargo, for its delivery as a condition precedent to a claim for freight had already been provided for; but the weight, for which otherwise no place of ascertainment would be contractually designated, although the indeterminate rule of the law that, as between the ports of lading and delivery, the lower weight governs, is, I apprehend, not usually acceptable to those for whose general acceptance this form was prepared. Moreover, the word "delivered," by reason of the place of its insertion, is properly referable only to weight, and correctly and naturally qualifies it, and not cargo. The amount of freight (especially in the case of sugar) may largely depend upon the place at which a cargo is weighed, and these parties certainly regarded that circumstance seriously, and, it may be assumed, considered it cautiously. Why, then, is it not reasonable to conclude that the carrier, observing in the printed form provision for payment of freight upon the weight (not cargo) delivered, required such change to be made as would entitle him to payment upon weight (not cargo) shipped; and what more probable than that, simply and solely because of this requirement, the word "delivered" was expunged, and "intake weight" substituted?

In my opinion, the clause in question does not call for construction, but, if it did, I still could not agree that the construction now put upon it would be warranted. Therefore I am constrained to dissent from this judgment.