## SANDERS v. MUNSON.

(Circuit Court of Appeals, Second Circuit. May 27, 1896.)

1. CONSTRUCTION OF CHARTER PARTY—TIME OF DELIVERY.

A steamship at New York was chartered, through shipbrokers, for use in the fruit trade. The brokers fully understood that the charterer insisted on her delivery at Santa Marta by April 15th; and by the charter party executed by them, as agents for both parties, the owner agreed to let, and the charterer to hire, the steamer "from the time of delivery at Santa Marta, about April 10th, for a period of four months." *Held,* that the use of the word "about" did not make time immaterial, but that it was inserted to allow for contingencies of navigation which might protract the voyage, and that the steamer was to leave New York in time to reach Santa Marta, ordinarily by April 10th. 61 Fed. 504, affirmed.

2. SAME—FAILURE TO DELIVER—PROCURING SUBSTITUTE.

The charterer, having learned that the steamer could not be repaired in time for delivery in season, notified the owner that he would not accept a later delivery, and should insist on a claim for damages. *Held,* that it thereupon became the owner's duty to find a fit substitute, and, having failed therein, the charterer himself was entitled to procure the most suitable substitute practicable under the circumstances, and recover of the owner any additional hire that he necessarily paid.

3. CONSTRUCTION OF CONTRACTS—INTERPRETATION BY PARTIES.

Ambiguities in the terms of a contract are often dispelled by the construction placed upon them by the parties themselves before any controversy arose, and the courts frequently give effect to this construction, and adopt the meaning which the parties have assumed to be correct.

Appeal from the District Court of the United States for the Southern District of New York.

William W. Goodrich (John A. Deady and Henry W. Goodrich, of counsel), for appellant.

Everett P. Wheeler (Wheeler & Cortis, proctors, Everett P. Wheeler and Harold G. Cortis, advocates), for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

PER CURIAM. This is an appeal from a decree awarding the appellee damages for the breach of a charter party entered into

between him and the appellant, bearing date March 3, 1893. The charter party was effected at New York City by Hurlbut & Co., who were acting as agents for both parties. They were instructed by the appellee to endeavor to procure him a steamship for employment in the fruit trade between Santa Marta, West Indies, and New Orleans, and were informed by him that he should want the steamship delivered at Santa Marta by the 15th day of April. The steamship Alert, of which the appellant had the control, was at the port of New York, undergoing repairs; and it was supposed that her repairs would be completed so that she could be ready for a voyage in time to answer the purposes of the appellee. She was represented to be of a speed averaging 10 knots an hour. She was offered to the appellee by Hurlbut & Co., and he, with some reluctance, consented to take her, and notified Hurlbut & Co., that if it was impossible to obtain a larger suitable steamship he would take her, delivery to be made at Santa Marta April 10th to 15th. The charter party was thereupon executed. By its terms the owner agreed to let, and the charterer to hire, the steamship "from the time of delivery at Santa Marta, about April 10th, for a period of four months," with an option for two months longer, at a compensation for the vessel and her officers and crew of £510 per month. About the 1st of April the appellee ascertained that the Alert could not be repaired in time to leave New York before April 19th, in which event she could not be delivered to him at Santa Marta before April 27th. He thereupon notified the appellant that he considered himself at liberty to fill her charter with another steamship, and should look to him for any difference in hire. The appellant, recognizing the fact that the Alert could not be delivered at the time mentioned, suggested to Hurlbut & Co. that he would place another steamship, the Bergenseren, at the disposal of the appellee, to take the place of the Alert for a single voyage, or until the latter should be ready to begin fulfilling the charter. The appellee declined to accept the Bergenseren, insisting that she was too slow and too small. Various suggestions about substituting some of the other vessels of the appellant in place of the Alert were made, some by Hurlbut & Co. and some by the appellee; but, as greater hire would have been exacted for these vessels, nothing came of the suggestions. April 4th the appellee chartered the steamship Claribel, a vessel of considerably larger cargo capacity, at a hire of £600 per month. The district court adjudged that there had been a breach of the charter party, and awarded damages in the sum of $5,863, being the additional expense of employing the Claribel for the term of the charter of the Alert.

The only questions upon this appeal are whether there was a breach of the charter party, and whether the appellee was justified in chartering the Claribel. It is conceded in the argument at the bar for the appellant that the recovery was not erroneous unless one or both of these questions ought to be resolved in his favor. Inasmuch as it was perfectly understood by Hurlbut & Co., while negotiations for the charter were pending, that the appellee insisted upon the delivery of the Alert to him at Santa Marta not

later than April 15th, but was willing to accept delivery as early as April 10th, and the parties knew that some contingencies of navigation might occur to protract her voyage from New York there beyond the usual time required, we are unable to doubt that the words "about April 10th" were inserted in the charter to allow a margin for such contingencies, and express the intention of the parties that she should be delivered about the 10th, but, in any event, by the 15th, and in that behalf should leave New York in time to reach Santa Marta ordinarily by April 10th.　Ambiguities in the terms of a contract are often dispelled by the construction which the parties themselves have placed upon the terms before controversy has arisen, and courts frequently give effect to this construction, and adopt the meaning which the parties have assumed to be correct.　When it was found that the Alert would not be repaired in time to sail and reach Santa Marta by April 15th, it was assumed by all concerned that she could not be delivered conformably to the contract.　Obviously, there was no misconception of the meaning of the recital.　As was remarked in the opinion of the district judge, the preliminary correspondence, and the nature of the employment for which the steamship was chartered, sufficiently denote that the time of the delivery of the steamship was an essential condition of the contract.　He observed:

"All the correspondence shows that it was so regarded from the first.　The fruit season is short; the cargo perishable.　Previous arrangements must necessarily be made, and were made, for the bananas at Santa Marta.　The vessel was to run in a line, and make semimonthly trips.　The proper care of a fruit cargo does not permit any material delay in starting on the voyage at the expected time.　The use of the word 'about' does not signify that time was here immaterial, but only that the precise day named was not warranted, and that allowance was to be made for accidents of the seas in going to Santa Marta.　It did not absolve the vessel from the duty to leave the port of departure at a time sufficient, in the ordinary course of navigation, to reach the port of delivery at the date named."

In these observations we fully concur.　The recital in the contract was in the nature of a warranty, or condition precedent, and a breach of the promise to deliver the vessel at the time specified entitled the appellee to indemnity commensurate with the loss naturally accruing.　Filley v. Pope, 115 U. S. 213, 6 Sup. Ct. 19.　The appellee was entitled to a vessel such as he had contracted for, for the whole period of the charter.　Nothing less would fully secure him the advantages of his bargain.　The difference between the charter hire and the reasonable cost of procuring such a vessel furnishes the most direct and obvious measure of damages.　If by the exercise of reasonable diligence the appellee could have procured another vessel in size, speed, and general qualities like the Alert, at a reasonable hire, for the term of the charter, it would have been his duty to do so, because the party injured by the breach of the contract cannot recover damages which arise by reason of his own inactivity or imprudence, and are not the necessary and natural consequences of the default of the other party.　As soon as the appellee found that the Alert could not be delivered in season, he notified the appellant that he would not accept a later delivery,

and should insist upon a claim for damages. It then became incumbent upon the appellant, if he desired to relieve himself from a more serious and uncertain responsibility, to furnish the appellee with another vessel, a fit substitute for the Alert, until such time as the Alert would be available. This he did not do, probably because no vessel, except a larger and more expensive one, was obtainable. He did not make any formal tender of the Bergenseren, and it is improbable that he would not have done so, and insisted upon her acceptance in lieu of the Alert, if he had not recognized the validity of the objections made by the appellee. The proofs leave it quite uncertain whether the Bergenseren could have been delivered seasonably to the appellee at Santa Marta. If she could have been, the appellee was under no obligation to accept a slower and smaller vessel than the Alert had been represented to be.

The circumstance that the appellee eagerly caught at the opportunity of rejecting the Alert, and was anxious to obtain a larger vessel, suggests doubt as to the propriety and good faith of his conduct in chartering the Claribel. But, after a careful scrutiny of the transaction, we conclude that she was the most suitable substitute, all things considered, which it was practicable for him to secure. The time was short, and the range of selection limited; and it hardly lies with the appellant, who was responsible for the situation, and understood its exigencies, and who ought to have actively interested himself in procuring a vessel to fulfill the charter, to insist, without proving, that the appellee could have found one upon better terms. Inasmuch, however, as the appellee obtained the use of a vessel which was better adapted to his purposes than the Alert, and which he would undoubtedly have been willing to hire originally at a higher price, we should have been better satisfied if he had not been allowed interest upon the difference of cost. It is quite immaterial that, as it turned out, the conditions of the fruit trade were such that he did not require as large a vessel as he supposed he would, and that one smaller even than the Alert would have answered his purposes. But no exceptions were taken by the appellant to the allowance of interest by the commissioner, and the only assignment of error in respect to damages is that the court failed to award nominal damages only.

The appellant seems to have had good reason to suppose, when he signed the charter, that the Alert would be ready for delivery to the appellee at the appointed time, and apparently he has been the victim of misplaced confidence in Hurlbut & Co., or of some one else who had supervision of her repairs. The case is a hard one for him, but we have been unable to find any good reason for rejecting the conclusions of fact reached by the experienced commissioner who heard the case upon the question of damages, and which were approved by the district judge.

The decree is affirmed, with costs, but without interest.