MANCHESTER S. S. CO., Limited, v. I. M. PARR & SON, Limited.

(District Court, E. D. Pennsylvania.  June 9, 1904.)

No. 67.

1. SHIPPING—CHARTER PARTY—TIME OF VESSEL'S ARRIVAL FOR LOADING.

  Under a provision of a charter party for the carrying of a cargo of grain, to be loaded at Philadelphia, that "in the event of the steamer not being ready for cargo on or before February 28, 1897, rate of freight to be one and one-half penny less," the vessel was in time when she arrived on the forenoon of February 28th, and was ready for cargo, although it was on Sunday, and by the law of the port she could not be loaded on that day, and notice was not given the charterer until the next morning.

In Admiralty.  Suit to recover balance of freight.

J. Warren Coulston and Willard M. Harris, for libelant.
J. Rodman Paul and Howard H. Yocum, for respondent.

HOLLAND, District Judge.  This libel was filed by the owner of the steamship Manchester on December 2, 1897, for the recovery of four hundred and forty dollars ($440), a balance due for a cargo of grain shipped from Philadelphia to a port in the United Kingdom of Great Britain in March of that year, under a charter party executed in Philadelphia January 30, 1897, by authorized agents of the parties thereto.  The Manchester, then trading, was to proceed to Philadelphia with all convenient speed, and there to load a "full and complete cargo of wheat and/or indian corn and/or rye," and, being so loaded therewith, to proceed direct to Queenstown, Falmouth, or Plymouth for orders, with the further stipulation that, "if ordered to a direct port in the United Kingdom [as was subsequently done] three shillings, one and one-half pence for each and every quarter of four hundred and eighty pounds, English weight, was to be paid as freight, delivered in full of port charges and pilotage on unloading and right delivery of the cargo in cash."  The charter party further provides that, "should the steamer not be ready for cargo at her loading port on or before the Twentieth day of March, 1897, the charterers, or their agents, to have the option of canceling this charter party at any time not later than the day of the steamer's readiness," and, "in the event of steamer not being ready for cargo on or before February 28th, 1897, rate of freight to be one and one-half penny less."

It appears from the evidence in this case that the respondents were engaged in shipping wheat from Philadelphia to Europe, and that the price which they were to receive for their shipments was controlled by the month in which it was loaded on the vessels at Philadelphia; if loaded in February one price, and if loaded in March the price was to be somewhat lower.  In their negotiations with the libelant's agents at Philadelphia, the respondents stated that the freight per quarter should be one and one-half penny less in case the loading took place in March.  The agents of the libelant in Philadelphia cabled the proposition of respondents to the steamship company at London, and the orders came back somewhat altered from the respondents' offer, and

in the exact terms, as appeared in the charter party, which was signed by the parties, to wit:

"That in the event of the steamer not being ready for cargo on or before February 28th, 1897, rate of freight to be one and one-half penny less."

The Manchester arrived in Philadelphia on February 28th, at 10:35 a. m., and was ready for cargo, in accordance with the provisions of the charter party. The respondents, however, claim that as the day of her arrival was Sunday, and the law prevented them loading her upon that day, and having received no notice of her presence until Monday morning, March 1st, they are not bound to pay the rates for a February ship, and set up the claim, which they endeavored to incorporate into the written agreement, that the higher rate was to be paid only in case the Manchester arrived in Philadelphia in time to be loaded during the month of February. The respondents undoubtedly, in their preliminary negotiations, endeavored to arrange for a lower rate in case the ship was not loaded in February, but the libelant rejected this proposition, and made the contract for the higher rate in case the vessel arrived on or before February 28th. If it was intended by both parties that the higher rates should depend on the ship being loaded in February, they could easily have said so, but this they failed to do.

We must assume that the respondents knew that February 28th was Sunday, and knew the law with regard to loading on that day at Philadelphia, and the execution of contracts of that kind. The same question had been before this court in 1892, and Judge Butler held that:

"The tender of a ship to a charterer on the Monday following the Sunday which would be, by the terms of the charter party, the last day for such tender, is in time, in the absence of some controlling custom of the port to the contrary. There is no custom of the port of Philadelphia requiring that, where the last day that a ship could be in readiness falls on Sunday, she should present herself on the previous Saturday." The Harbinger, 50 Fed. 941.

The case at bar is controlled by this decision, which was subsequently affirmed by the Circuit Court of Appeals in the case of Gill & Fisher, Limited, v. Browne, 53 Fed. 394, 3 C. C. A. 573, in an elaborate opinion by Judge Acheson. In the Harbinger Case, as in this, the charterers engaged the vessel for the purpose of shipping grain, and, as stated by Judge Butler on page 942, 50 Fed., "she was chartered for a January shipment," but the vessel arrived on the 31st day of January, the last day mentioned in the charter party, which was Sunday, and was held to be in time to comply with the agreement. The language used in the Case of The Harbinger as to the time of the arrival of the steamer, to wit, "Should the steamer not be ready for cargo at her loading port on or before the thirty-first day of January, 1892, the charterers, or their agents, to have the option of canceling this charter party at any time not later than the day of steamer's readiness," is the same as that used in the case at bar with reference to the time of the arrival of the Manchester, the latter being as follows: "In the event of the steamer not being ready for cargo on or before February 28th, 1897, rate of freight to be one and one-half penny less." The efforts of the respondents to alter the terms of the

charter party by setting up the cotemporaneous oral agreement that the ship must arrive in time to be loaded in February in order to recover the higher rate of freight, even if permitted in law, is not sustained by the evidence, as that proposition was rejected by the steamship company when cabled to them by their agents at Philadelphia, and the contract finally made in the terms above quoted; nor is there any evidence to show that "ready for cargo" has a meaning in Philadelphia which respondents endeavored to assign to it, to wit, "ready for cargo on a day in which she could be loaded." The Manchestei was bound to be at the port of Philadelphia on or before February 28th, "ready for cargo," and her arrival here on that date at 10:3ᵣ a. m., "ready for cargo," was a compliance with her contract. The re spondents, therefore, are liable for the higher rate of freight, and a decree will be entered for the libelant for the sum of $475, which includes interest; said decree for said sum of $475 to bear interest from this date.