## HULBERT v. FELBER ENGINEERING WORKS.

(Supreme Court, Appellate Term. March 8, 1912.)

1. CONTRACTS (§ 303*)—SPECIFIED FUND—EXISTENCE.

Though ordinarily there can be no recovery for money payable out of a specified fund, where such fund depends on a contingency which has never happened, yet if defendant by his own wrongful act has prevented the happening of the contingency, and has thus made it impossible for the fund to exist, he cannot assert its nonexistence as a defense.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1409–1443; Dec. Dig. § 303.*]

2. CONTRACTS (§ 170*)—BREACH—TIME OF PERFORMANCE.

Plaintiff contracted to furnish certain iron to a coaster company, shipment to be made "about two weeks" after March 17, 1911, and payment to be made 30 days after shipment. Defendant agreed with plaintiff to supply the iron at a price which would yield plaintiff a profit, to be paid by defendant on receipt of payments from the coaster company, which notified defendant that it would expect shipment of a part of the iron the week succeeding April 19th and the balance in 10 days. On defendant's request for further time until April 24th, this was granted, and on May 8th defendant wrote the coaster company that it would be unable to complete shipment until the 20th. On May 10th the coaster company's attorney wrote defendant that it could wait no longer, and therefore canceled the contract, to which defendant assented. Held, that the parties had themselves construed the phrase "about two weeks" after March 17th to mean not later than May 10th, and defendant, having acquiesced in the coaster company's rescission, was liable to plaintiff for the amount he would have made, had defendant completed the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. § 170.*]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Edith A. Hulbert against the Felber Engineering Works. From a Municipal Court judgment in favor of defendant, after trial without a jury, plaintiff appeals. Reversed, and new trial ordered.

Argued January term, 1912, before SEABURY, GERARD, and HOTCHKISS, JJ.

Warren S. Burt, for appellant.
Thomas F. Keogh, for respondent.

HOTCHKISS, J. The plaintiff made a contract with the International Giant Coaster Company to furnish it with a quantity of 3/8"x3" iron, shipment to be made "about two weeks" after March 17, 1911, the date of the contract. Additional orders for similar goods were added to the contract on April 4th and 8th, shipments to be made with the goods ordered March 17th. Payment for all was to be made 30 days after date of shipment. The defendant agreed with plaintiff to assume the contract and supply the iron at a price which would yield plaintiff $287.60, the amount sued for in this action, which amount defendant agreed to pay "upon receipt of payments by us" (defendant) from the Coaster Company. In a letter to the Coaster

Company, dated April 19th, defendant informed it that the contract had been assigned, and said:

"We will expect to ship early next week all of the 3/8"x3" and the balance in ten days. We wish you would kindly acknowledge receipt of this notice, and advise us that the above is satisfactory and that payments will be made to the order of this company in accordance therewith."

The Coaster Company answered this letter on April 24th, assenting to its suggestions and requests. Ellsworth, plaintiff's agent, testified that about a week after this he asked defendant's agent, Plunkitt, when delivery could be expected, saying that "the purchasers were roaring about the material," and that Plunkitt replied that he was very sorry, but he was going to get the stuff out as soon as possible, but he had been compelled to give preference to another customer. Plunkitt, when examined as a witness, admitted this conversation, or the substance of it.

It is apparent from this and other testimony that the Coaster Company and plaintiff were, at the time testified and thereafter, urging defendant to deliver. It is equally plain that defendant was itself disappointed at its inability to conform to these demands, and that its failure to deliver was due to the failure of others with whom it had in turn placed the orders. In its letter of May 5th to its subcontractor, defendant says:

"Something must be done to hurry forward this order, as we based our plans on your promise that this iron could be gotten out in a few days. * * * We would like to have shipping papers not later than next Wednesday. What can you do for us?"

On May 8th, in response to a telephone inquiry, defendant wrote to the Coaster Company:

"We regret to advise that, owing to unforeseen delay, we will be unable to make complete shipment of your order * * * until May 20th. * * * We trust you will be able to bear with us in this matter, and, if we can do anything to improve this date of shipment, we will be glad to do so."

On the 10th of May the attorney for the Coaster Company wrote defendant that it was "very much in default," that they had "been waiting * * * quite some time under your promise to make shipment," that they could wait no longer, and therefore canceled the contract. On the same day the defendant wrote the Coaster Company, saying:

"In response to telephone *request* (sic) by your Mr. Jarvis, we are canceling your orders for material placed with Mr. Ellsworth, and assigned to us."

The appellant argues for a reversal of the judgment on the ground that the evidence shows a voluntary cancellation of the contract by defendant. The respondent, while denying that there was any voluntary abandonment of the contract, contends that appellant was not entitled to recover, because nothing was ever received by defendant from the Coaster Company under the contract.

[1] I cannot assent to either of these theories. Nor is it necessary to appellant's right to recover that the contract should have been voluntarily abandoned by the respondent. Although ordinarily there

can be no recovery for money payable out of a specified fund, where such fund depends on a contingency which never happened (Franklin v. Robinson, 1 Johns. Ch. 157; Cartledge v. West, 2 Denio, 377), if the defendant has by his own wrongful act prevented the happening of the contingency, and has thus made it impossible for the fund to exist, he cannot assert such act as a defense.

[2] We are therefore led to inquire whether the cancellation of the contract by the Coaster Company was justified on its part, and was due to the failure of respondent to ship within the contract period. If both of these questions are answered in the affirmative, it was error for the court below to nonsuit the appellant. As a rule, where contracts of sale express the time of delivery, the question is one of construction, and therefore one of law for the court, and not of fact for the jury. Benjamin on Sales, § 1024. Here, as has been stated, shipment was to have been made "about two weeks after March 17th." There seems to be a dearth of authority in this state as to the meaning of the word "about," when used in reference to time. But in the federal courts the term has been interpreted in several cases. In Sanders v. Munson, 74 Fed. 649, 20 C. C. A. 581, it was held that the use of "about" did not render the time of performance of a contract so indefinite as to show an intent that time should not be material. To the same effect was the decision in the case of The Albert (D. C.) 61 Fed. 504. In Von Lingen v. Davidson, 1 Fed. 178, speaking of the word "about," as used in a charter party which recited that a vessel was "about to sail," the court said:

"The word 'about' can only be construed with reference to the subject-matter and circumstances with regard to which it is used. It has a more uncertain meaning than the words 'almost,' 'nearly,' 'well-nigh,' and unless I adopt the method last above indicated, I think we are entirely without any guide in ascertaining its meaning as used in this charter."

Recourse to the circumstances surrounding the contract in this case may be avoided by the application of a further rule of construction, which the facts brought out at the trial justify us in resorting to. Bennett v. Lingham (D. C.) 31 Fed. 85, was an action for damages for failure to ship on plaintiff's steamer, which, by the contract, was "sailing from New York *about* the middle of September." On September 14th defendant was informed that the steamer would sail on September 27th, and he made no objection. In the course of his opinion, Benedict, District Judge, said:

"The phrase 'about the middle of September' is indefinite. It has no definite meaning in the trade. In this instance it was construed by the ship to cover a day as late as September 27th. This construction was made known to the defendant on September 14th, and he then made no objection to that construction. After this interpretation of the indefinite phrase, * * * acquiesced in by defendant, and that, too, a day before the middle of September, it was not open to the defendant to say that a tender of the ship on the 29th of September was not a compliance with the contract."

Adopting the principle invoked in Bennett v. Lingham, I think we find sufficient evidence in the present case to show that there was a practical construction by the parties of the meaning of the phrase "about two weeks after March 17th," sufficient, at least, to satisfy

me that the respondent on May 10th, when the Coaster Company rescinded the contract, was conscious that it was, and had for some time been, in default in its shipment, and that for this reason it acquiesced, without protest, to such rescission. If the foregoing views are correct, they lead to a reversal of the judgment.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.