(Decided 4th February, 1887.)

---

HAMILTON H. SALMON *vs.* THOMAS J. BOYKIN, JAMES W. CARMER, and others, co-partners, trading as BOYKIN, CARMER & CO.

*Contract—Shipment—Time of Loading—Conditions Precedent—Stipulated quantity Sold—When Purchaser not bound to Accept.*

Where a mercantile contract for the sale of goods to be shipped from a foreign port, stipulates that the shipment is to be made within certain specified months, that the goods are to be of a certain quality, and that the name of the vessel is to be declared as soon as it is known to the seller, these are conditions precedent to be performed by him, before he can sue for a breach of the contract.

The seller is bound to deliver the quantity stipulated, and has no right either to compel the buyer to accept a less quantity, or require him to select a part out of a greater quantity.

Where a contract is for the sale of five hundred and seventy-three tons of kainit, and the seller offers to deliver five hundred and eight tons, the purchasers are not bound to accept.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First Exception.*—This exception was taken to the ruling of the Court in refusing to strike out so much of the testimony offered by the defendants as related to the pur-

pose for which they purchased the kainit from the plaintiff, and the time at which they proposed and expected to make use of the same, the objection by the plaintiff to such testimony being that it was not pertinent or material to any issue in the case, and that it was not shown that the purpose was communicated or made known to the plaintiff prior to or at the time the plaintiff and defendants entered into the contract sued upon.

*Second Exception.*—The plaintiff asked the following instruction:

That if the jury shall find from the evidence that on the 8th of October, 1883, the plaintiff and the defendants trading under the firm name of Boykin, Carmer & Co., of Baltimore City, entered into the agreement set forth in the written and printed memorandum of sale of that date, offered in evidence, and that J. H. Cottman, by whom said memorandum is signed, was the broker of the parties, duly authorized to sign the same; and that in pursuance of said agreement, the plaintiff did cause to be shipped from the port of Stettin, in Germany, in the month of November, 1883, on board of the bark "Ala," bound on a voyage from Stettin to Wilmington, North Carolina, five hundred and seventy-three tons of raw kainit, of the quality and description mentioned in said memorandum of sale of the 8th of October, 1883, to be delivered at the port of Wilmington aforesaid, to order, and that immediately upon being advised of said shipment, and upon receipt of the bill of lading therefor, the plaintiff wrote the defendants the letter offered in evidence, dated 4th of December, 1883, and that in reply thereto the defendants addressed to the plaintiff the letter dated the 6th of December, 1883, and that subsequently the plaintiff wrote to the defendants the letters offered in evidence, dated the 7th of December, 1883, the 10th of December, 1883, the 8th of Jany., 1884, and the 10th of Jany., 1884, and that in reply to said last mentioned letter, the defendants wrote to the plaintiff the

Salmon *vs.* Boykin, Carmer & Co.

letter offered in evidence, dated the 11th of Jany., 1884, and that said letters were received by the parties to whom they were addressed, and that the said bark "Ala" with said kainit on board, after leaving the port of Stettin in the month of November, 1883, on her said voyage to Wilmington, sprung aleak, and was compelled to put into the port of Arendahl, in Norway, for repairs, and that it was found necessary to tranship and transfer part of the kainit on board of the said bark "Ala," to another vessel, the schooner "Amykos," for transportation to Wilmington, the amount of kainit so transferred to the "Amykos" being over three hundred tons, and the amount remaining or replaced on board of the "Ala" being over two hundred tons, the residue of said kainit, which neither of said vessels was able to carry, being left at Arendahl, and that immediately upon being apprised of said transhipment of a portion of said kainit at Arendahl, the plaintiff wrote to the defendants the letter offered in evidence, dated the 28th of May, 1884, and also the letter dated 31st of May, 1884, and that said letters were received by the parties to whom they were addressed; and that subsequently, about the 22nd of June, 1884, the said bark "Ala," and said schooner "Amykos," did arrive at the port of Wilmington, having on board about five hundred tons of kainit shipped as aforesaid from Stettin, but that before the arrival of said vessels, the defendants wrote to the plaintiff the letters dated the 11th of March, 1884, the 13th of March, 1884, the 15th of March, 1884, 29th May, 1884, and the 3rd of June, 1884, and that thereupon the plaintiff wrote to the defendants the letter dated the 4th of June, 1884, and that said letters were received by the parties to whom they were addressed; that the defendants continued to refuse to accept or pay for said kainit upon the arrival of said vessels, and that thereupon the plaintiff sold the same to the best advantage, and that the prices at which the same were sold were the fair market prices for said kainit at the

port of Wilmington at that time, and that the amount realized therefrom was less than the price which the defendants had agreed to pay for the same, that then the plaintiff is entitled to recover the difference·between the contract price of the five hundred and eight tons of kainit, which arrived at the port of Wilmington on board of the " Ala " and the " Amykos," and the net proceeds of the sale of the same, after deducting the necessary expenses incurred by the plaintiff in making said sale.

The defendants prayed the Court to instruct the jury as follows :

1. That the plaintiff is not entitled to recover in this case, because the uncontradicted testimony shows that the contract sued on was for the sale of a certain number of tons of kainit, viz., five hundred and seventy-three tons, to be delivered in a vessel known as the " Ala," at the port of Wilmington, N. C., and that said number of tons was not delivered by said vessel.

2. That if the jury find from the evidence in this case, that the plaintiff sold to the defendants five hundred and seventy-three tons of kainit, to be delivered at the port of Wilmington, N. C., and that the plaintiff agreed to give to the defendants the name of the vessel from which he proposed to make said delivery, and did give the name of said vessel as the " Ala," and shall further find that said cargo of five hundred and seventy-three tons was not delivered in the " Ala," but that about two·hundred and sixty tons thereof arrived for said delivery in the " Ala," and about three hundred tons thereof arrived in a vessel called " Amykos," and the balance of said cargo was left behind in the port of Arendahl, in Norway ; and shall further find that the defendants refused to accept the goods as so delivered, their verdict must be for the defendant.

3. That if the jury find from the evidence that the plaintiff sold to the defendants the cargo of kainit in evi-

dence, and that the plaintiff knew that said cargo was to be used by the defendants during the months of January and February, 1884, for their spring business, and shall further find that said cargo did not arrive for delivery until the month of June, 1884, the plaintiff is not entitled to recover.

4. That if the jury find from the evidence that the plaintiff sold to the defendants a cargo of kainit, to be shipped from the port of Stettin, in Germany, in a vessel called the " Ala," during the month of October or November, and that in the usual course of time said vessel should have arrived at her port of destination from the 13th to the 31st of January, 1884; and shall further find that said cargo did not arrive in Wilmington until the month of June, 1884, when the defendants had no use for the same, and shall further find that the delay in the arrival was due to her unseaworthiness and her inability to carry the cargo sold, and that the defendants notified plaintiff in the month of March, 1884, of their refusal to accept said cargo on arrival, the plaintiff is not entitled to recover.

The Court (STEWART, J.) rejected the plaintiff's prayer and the first prayer of the defendants, and granted the other prayers of the defendants. The plaintiff excepted, and the verdict and judgment being for the defendants, he took this appeal.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*D. K. Este Fisher*, for the appellant.

*Fielder C. Slingluff*, for the appellees.

ROBINSON, J., delivered the opinion of the Court.

This is an action brought by the appellant, the seller, on a contract for the sale of 573 tons of kainit. The con-

. tract of sale, was made through a broker, and reads as follows :—

"J. H. COTTMAN,

Broker in Chemicals, Dye-stuffs, Brimstone, &c., Baltimore."

No. 3364.                "BALTIMORE, Oct. 8th, 1883."

"Sold to Messrs. Boykin, Carmer & Co. (Balto., Md.), for account of Mr. Hamilton H. Salmon (New York), about four hundred to five hundred tons raw kainit, German, test not less than 23 per ct., for shipment from Germany to Wilmington, N. C., during October or November, 1883, at $9.25 per ton, 2,240 lbs., invoice weight, ex-ship in bulk at Wilmington, payable cash on arrival of vessel; seller has option of shipment from New York out of vessel sailing from Germany, not later than November, 1883, if direct shipment unobtainable ; in either case seller to give buyer name of vessel from which he proposes making delivery, as soon as received by him.

(Signed),                J. H. COTTMAN."

Duplicates of the contract were sent to the appellant and appellees, and were endorsed "accepted" by them respectively.   In pursuance of the contract, the appellant through his correspondent, shipped from the Port of Stettin, Germany, in November, five hundred and seventy-three tons of crude kainit, answering the description given in said contract, on the barque "Ala," for Wilmington, N. C.   And immediately on receipt of the bill of lading, he declared to the appellees the name of the vessel, stating at the same time, that seventy-three tons more had been shipped than required by the contract.   The appellees agreed to take the 73 tons extra, and the original contract was in this respect modified.

The "Ala" sailed from Stettin about 13th November, and on the 19th December, being leaky, was obliged to put into Arendahl, Norway, for repairs.   On February

4th, she again sailed for Wilmington, but on the same day put into Egersund, again leaking, whence she was towed back to Arendahl for repairs. These being completed, by the direction of the underwriters only 200 tons were reloaded in the "Ala;" and three hundred and eight tons were transhipped to the "Amykos," a vessel chartered for the purpose, and neither vessel being able to bring the balance of the cargo, about sixty tons, it was left behind. Both vessels arrived at Wilmington—the "Ala" on the 16th June, after a voyage of *seven months*, and the "Amykos" on the 23d of the same month. The voyage from Stettin to Wilmington is ordinarily from sixty to ninety days. The appellees having refused to accept the kainit, it was sold on their account, and this suit is brought to recover the difference between the net proceeds of sales and the contract price.

In support of the action, the appellant contends, 1st. That the contract of October 8th is an absolute sale of the kainit whereby the title passed at once to the appellees; and 2dly. If it is to be construed as an agreement to sell, all the conditions precedent to complete the sale were performed by the appellant.

The contract before us is a mercantile contract for the sale of goods to be shipped from a foreign port, and although the language used is "sold, &c.," yet the contract shows that it was a sale on conditions. The shipment was to be made within certain specified months, and the kainit was to be of a certain quality, and the name of the vessel was to be declared so soon as it was known to the appellant. By the very terms of the contract, these were conditions precedent to be performed by the appellant, before he could sue for a breach of the contract. If he failed to ship the kainit within the time specified—if it was not of the quality prescribed, or if he did not declare the name of the vessel so soon as it was known to him, the failure of these or any one of these conditions, released

the appellees from liability. This we take to be well settled law.

In *Bowes vs. Shand, L. R.,* 2 *App. Cases,* 455, the suit was brought on two contracts which read as follows:—

" We have this day sold for your account to Bowes, Martin & Kent, the following Madras rice to be shipped at Madras, or coast, for this port during the months of March and (or) April, 1874, about (300) three hundred tons, per Rajah of Cochin." Part of the cargo of rice was shipped in February instead of March and (or) April as specified in the contract. In an action against the purchaser for refusing to accept the cargo on arrival of the vessel, the House of Lords held that the action could not be maintained, because the meaning of the contract as apparent upon its face, was that all the rice must be shipped in March or April.

Lord Chancellor CAIRNS said : " It is a mercantile contract, and merchants are not in the habit of placing upon their contracts stipulations to which they do not attach some value and importance. If it be admitted that the literal meaning would imply, that the whole quantity must be put on board during a specified time, it is no answer to that literal meaning, it is no observation which can dispose of, or get rid of, or displace, that literal meaning, to say that it puts an additional burden on the seller, without a corresponding benefit to the purchaser ; that is a matter of which the seller and the purchaser are the best judges. Nor is it any reason for saying that it would be a means by which purchasers without any real cause would frequently obtain an excuse for rejecting contracts when prices had dropped. * * * What is sold is not three hundred tons of rice in gross, or in general. It is three hundred tons of Madras rice, to be put on board at Madras during the particular months. * * The plaintiff who sues upon that contract, has not launched his case until he has shown that he tendered the thing which has

been contracted for, and if he is unable to show that, he cannot claim any damages for the non-fulfilment of the contract."

Lord BLACKBURN said:

"But the parties have chosen for reasons best known to themselves, to say: 'We bargain to take rice, shipped in this particular region, at that particular time, on board that particular ship.'"

Here the appellant was bound not only to ship the kainit within the specified months, but also to declare the name of the vassel, and to do so as soon as it was known to him. This was expressly decided in *Buck vs. Spence*, 1 *Camp.*, 329, where the seller agreed to sell a certain quantity of flax to be shipped from St. Petersburg and was bound to declare the vessel, as soon as it was known to him. The vendor received the information as to the vessel on the 12th of September in London, and did not communicate it to the defendant who resided at Hull until the 20th. The vessel arrived in October and the defendant refused to accept the flax. The Court held that the declaration of the vessel to the defendant was a condition precedent, and that it had not been complied with, and that the question whether or not the declaration made eight days after receiving the information was a compliance with the condition was one of law and not of fact.

If then the shipment of the kainit within the months specified, and the declaration of the vessel by which it was shipped, were conditions precedent to be performed by the appellant, the contract of October 8th, was not, it is clear, an *executed contract*, whereby the title to the kainit passed to the appellees. It was but an *agreement to sell* on certain conditions, and the question is whether these conditions have been performed so as to entitle the appellant to sue the appellees for the non-acceptance of the kainit.

The proof shows the kainit was shipped in proper time, and of the quality contracted for, and the name of the ves-

sel was duly declared.   All these conditions have been complied with.   The obligation on the part of the appellees was to pay for it on the arrival of the vessel.   Whether the contract is to be considered as a contract for the sale of goods "*to arrive by*," or "*on arrival by*," or "expected to arrive by" a certain vessel named, and to be construed subject to the double condition of the arrival of the vessel, and the arrival of the goods on board of that particular vessel, is a question not necessary for the decision of this case.   Be this as it may, the appellant did agree to sell to the appellees 573 tons of kainit to be shipped from a foreign port, and before he can sue them for non-acceptance of the cargo, he must show that he was ready and offered to deliver the quantity he agreed to sell.   If he offered to deliver a *less quantity*, the appellees were not bound to accept it.   As was said by the Supreme Court in *Norrington vs. Wright*, 115 *U. S.*, 288, "The seller is bound to deliver the quantity stipulated, and has no right either to compel the buyer to accept a less quantity or require him to select part out of a greater quantity."   This well settled principle is fully recognized and adopted in *Dixon vs. Fletcher*, 15 *Mees. & Wels.*, 85; *Nicholson vs. Guardians of Bradfield Union*, L. R., 1 Q. B., 620; *Oxendale vs. Wetherell*, 9 *B. & C.*, 386, and *Waddington vs. Oliver*, 2 *Bos. & Pul.*, N. R., 61.

And in the still later case of *Reuter vs. Sala*, L. R., 4 C. P. Div., 239, where the contract was for the sale of twenty-five tons, more or less, Penang black pepper, October and (or) November shipment from Penang to London, the name of the vessel to be declared within sixty days from date of bill of lading.   Five tons of the twenty-five, were not shipped within the months specified, and although the vessel arrived with twenty-five tons of pepper on board, the purchaser refused to accept either the twenty-five tons, or the twenty tons which had been shipped within the months specified.   In an action by the seller to recover

damages for the non-acceptance of the pepper, the Court held that the purchasers were not bound to accept the twenty tons, but were entitled to insist upon the delivery of the twenty-five tons according to the terms of the contract. THESIGER, L. J., said : "The argument before us has been mainly directed to the question whether the plaintiffs can maintain this action in respect of the twenty tons. I am of opinion that they cannot do so. The subject of the contract is the sale of a specific quantity of a given article, with a margin for a moderate excess in or diminution of that quantity under the words "about" and "more or less."

"The rule applicable to such a contract, if it were not qualified by other provisions, would be that subject to the moderate margin, the sellers cannot call upon the buyers to accept any greater or less quantity of the article bargained for than the specified quantity. In the present case, if the five tons shipped, or declared too late, be excluded, the diminution in quantity is clearly beyond the margin."

In this case, the contract was for the sale of five hundred and seventy-three tons, and the appellant offered to deliver five hundred and eight tons, two hundred tons by the "Ala" and three hundred and eight tons by the "Amykos." The appellees were not bound to accept this delivery. They had the right to stand on the very terms of the contract, and it is not for us to speculate as to the reasons and motives by which they are governed. In contracts of this kind, parties may qualify to some extent the quantity by "more or less," or "about," or by words of like import, or they may stipulate in precise terms what excess or diminution shall avoid the contract. In the absence of a stipulation of some kind to the contrary, the seller must deliver, or offer to deliver goods in the quantity and of the quality contracted for.

In dealing with this case, we have considered the contract for the five hundred and seventy-three tons, as in

full force between the parties.   The appellees it is true, wrote to the appellant in February, stating that the delay in the arrival of the vessel, would prevent their taking more than the original contract.   But to this the appellant refused his assent and insisted they should take the five hundred and seventy-three tons.   The contract was not, therefore, rescinded.   Taking this view of the case, it is unnecessary to consider the several questions presented by the other exceptions.

*Judgment affirmed.*

(Decided 4th February, 1887.)