## CHARLES A. O'DONNELL v. DAILY NEWS COMPANY OF MINNEAPOLIS.[1]

November 22, 1912.

Nos. 17,660—(23).

**Offer and acceptance by telegraph — construction of messages.**
    A telegraphic offer of employment, which is manifestly the result of prior

[1] Reported in 138 N. W. 677.

Note.—As to time and place of consummation of contract when offer by letter is accepted by telegram, or vice versa, see note in 6 L.R.A.(N.S.) 1016.

As to validity of oral contract for a year's services to commence in futuro see note in 2 L.R.A.(N.S.) 738.

verbal negotiations, and which alone does not purport to contain all the essential terms of a contractual offer, must be considered as though the language thereof had been used at the conclusion of the negotiations, or conversely, as though express reference to the substance of the negotiations had been incorporated in the telegram; and the terms of the contract created by a telegraphic acceptance of such offer are to be gathered from the telegrams and the negotiations taken together, and not from the telegrams alone.

**Contract of employment — statute of frauds.**

A contract for services, which by its terms shows that it is not to be performed or is incapable of performance within one year from the making thereof, is within the statute of frauds; but a contract for one year's services commencing on the date on which the contract is made, is not within the statute.

**Same.**

Defendant's telegraphic offer of employment and its letter explanatory thereof, and the plaintiff's telegraphic acceptance, *held* not to be sufficient writings to satisfy the statute of frauds.

**Same — evidence.**

Where the date for the commencement of the performance of a contract is shown by the same evidence which establishes the contractual consensus, such date must, for the purpose of determining the applicability of the statute of frauds, be deemed to appear from the terms of the contract.

**Contract construed.**

Contract for one year's employment considered, and *held* to show by its terms that the commencement of its performance was to begin in the future, thus bringing it within the operation of the statute of frauds.

**Time of performance — evidence.**

In determining the applicability of the statute of frauds to a contract of employment, the date of the contract will not be presumed to be the date for the commencement of its performance, where it affirmatively appears from the terms of the contract that a subsequent date therefor is contemplated.

**De minimis non curat lex.**

The doctrine of *de minimis* cannot be invoked to avoid the operation of the statute of frauds upon a contract which by its terms is not to be performed within one year.

Action in the district court for Hennepin county to recover $3,380 for breach of contract. The complaint, among other matters, alleged that on or about January 31, 1910, a contract was entered into between defendant and plaintiff (who was then residing in Pennsylvania) whereby defendant agreed to employ plaintiff as its advertis-

ing manager for one year from the date of such contract, and plaintiff agreed to accept said employment and within the first week thereof to remove with his family from Philadelphia to Minneapolis; that defendant agreed to pay plaintiff, as compensation for his services under said contract and in reimbursement of the expenses which plaintiff might incur in so removing from Philadelphia to Minneapolis, the sum of $65 per week for each and every week during the year from and after the making of the contract. The complaint also alleged that plaintiff at Minneapolis on February 2, 1910, offered performance of said agreement on his part, but defendant refused to assign any duties to plaintiff and repudiated its agreement. The amended answer denied that defendant ever entered into any contract with plaintiff; and among other matters alleged that defendant had an oral conference with plaintiff about January 27, 1910; that at the end of the conference a matter had been raised as to whether he had given away confidential information and plaintiff notified defendant that it should have full power of investigation; that defendant made a proposition by telegram to give plaintiff $65 a week, and thereafter, upon receipt of a certain communication, on January 31 defendant's president directed a wire withdrawing the offer made, which as defendant believed reached plaintiff before he answered defendant's telegram. The reply admitted that in the conversations which preceded the making of the contract plaintiff told defendant he had had experience in the business of an advertising manager and considered himself competent to take employment in that capacity, and very possibly plaintiff may have said that, if employed by defendant, he would use his experience and knowledge of said business to the best of his ability; but no other statements were made or asked for.

The case was tried before Holt, J., who made findings and as conclusion of law ordered judgment in favor of plaintiff for $65. From the judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*A. B. Jackson,* for appellant.

*Wilson, Mercer, Swan, Ware & Stinchfield,* for respondent.

PHILIP E. BROWN, J.

This is an action for damages for breach of an alleged contract for the plaintiff's employment as advertising manager for the defendant, the Minneapolis Daily News. The case was tried to the court without a jury. Findings were filed, it being held that the plaintiff was entitled to recover of the defendant the sum of $65, and judgment was ordered to be entered accordingly. Whereupon the plaintiff made request for substituted or additional findings, which request was denied, and judgment was entered as ordered. This is an appeal by the plaintiff from the judgment so entered.

The facts, as gathered from the undisputed evidence and the findings of the court, are as follows:

On January 27, 1910, the plaintiff came to St. Paul, met the president and general manager of the defendant corporation, and orally proposed to enter the employment of the defendant as its advertising manager at Minneapolis, at a salary of $60 per week, for the first year, and moving expenses from his then home at Germantown, Pennsylvania. No direct reply was made by the defendant's representatives to this proposition, but the parties entered into a general conversation with reference to employing the plaintiff as the defendant's advertising manager at Minneapolis. In the course of this conversation the defendant's president objected to the proposition as to the payment of the plaintiff's moving expenses, and suggested that he would prefer to pay the plaintiff a definite sum, $250 or $300, to cover such expenses, to which suggestion the plaintiff assented as being satisfactory to him. The plaintiff also stated that he wanted a contract for at least a year, but the defendant's representatives said nothing as to the length of time for which the contract was to continue, though they did intimate strongly that they did not wish the plaintiff to use a position with the defendant as a stepping stone to a position with some other newspaper. It was agreed between the parties that, if a contract should be made, the plaintiff could report for work at Minneapolis in about a week from the date of the conversation, or on February 7, and that such would be agreeable to the defendant. The negotiations then closed, without any contract having been made, but with the understanding that the plaintiff would

receive a telegram upon his return to his home, relative to his application for the position. The plaintiff then, after receiving from the defendant's president a check for $75 to cover the expenses of the trip which he had made to St. Paul in order to have the conference above described, returned to his home in Germantown, where, on January 30, 1910, he received the following telegram from the defendant:

"Minneapolis, Minn. 1/29/10.

"To Charles A. O'Donnell,
    "a. 43 Durham, St. Airy.
    "Come for $65.00 per week, without payment of moving expenses. When can you report?
                     "J. Burgess, Minneapolis Daily News."

In reply to this message, the plaintiff, on January 31, 1910, sent to the defendant the following telegram:

"All right, will be there next Monday,"

which day fell on February 7.

After sending this message, but on the same day, he received a telegram from the defendant as follows:

"Have made other arrangements. Will not need you now."

And likewise, on the same day, he received the following letter from the defendant:

"Minneapolis, Minn., Jan. 29th, 1910.

"Mr. Chas. A. O'Donnell,
    "243 E. Durham St.,
        "Philadelphia, Pa.
"Dear Mr. O'Donnell:
    "I wired you today as follows: 'Come for $65 per week without payment of moving expenses. When can you report?' I prefer to

pay you $5.00 more per week salary than to pay your moving expenses, simply as a matter of bookkeeping and because it is not our practice to pay expenses of this sort. I hope that this will be satisfactory to you, and that you will come on the field at once.

"I may say that I am very much pleased at this arrangement myself, and am glad to have you associated with me in the conduct. of the Minneapolis Daily News. I am expecting that you will be able to report by Feb. 7th.

"With kindest personal regards, I am,

"Yours for business,

"The Minneapolis Daily News,

"By J. Burgess,

"Manager."

Previously to the receipt of the telegram notifying him that he was not wanted for the position in question, the plaintiff had surrendered the lease for his home in Germantown, and had begun to pack and ship his furniture and household effects to Minneapolis; and on February 7, 1910, he reported at the office of the defendant in the said last mentioned city, ready and willing to commence work, but the defendant refused to allow him to do any work for it, its alleged reasons for such refusal being immaterial in the view which we take of the case. The plaintiff thereafter made diligent effort to find other employment, but failed to get any, except to the extent of earning $500 during the following year.

Aside from the ultimate questions presented to this court for determination, the above statement represents the substance of not only the findings made by the court, but also the substituted or additional findings requested by the plaintiff, and thus we are relieved of the necessity of passing upon the propriety of the court's denial of the plaintiff's request for additional findings, except, of course, in so far as such request may involve the ultimate questions involved. These questions are: (1) Was the contract which was entered into by the parties one for an indefinite period at a fixed salary of $65 per week, or was it a contract for a year's services at

such salary? (2) If the contract was for a year's services, what must be deemed to be the date contemplated thereby for the commencement of its performance, this question being material upon the defense of the statute of frauds?

1. Upon the first of these questions we must hold, with the plaintiff, that the contract which was closed by the plaintiff's telegram of acceptance of date January 31, was not for an indefinite period, but for the term of one year. It seems clear to us that while the telegrams above quoted, taken alone, did not constitute a contract, yet that the defendant's telegram of January 29 must be considered in connection with, and as supplementary to, the negotiations which took place on January 27, and that when so interpreted it must be read as though it had been written out substantially as follows: "Referring to our negotiations of January 27, in the course of which you offered to take the position of advertising manager for the Minneapolis Daily News at a salary of $60 per week for the first year, with an allowance for moving expenses, we have decided to offer you $65 per week, without moving expenses." Such an interpretation of the telegram is, furthermore, strongly supported by the defendant's letter of January 31, explaining the telegram. And if such be its proper interpretation, we think it clearly follows that the offer made thereby was for a year's employment. Conversely stated, our conclusion is that the whole transaction which culminated in the defendant's offer by telegraph should be considered just as if the language of the telegram had been used by the defendant's officers at the conclusion of the negotiations which took place on January 27, and the offer made thereby had thereupon been accepted by the plaintiff in the words of his telegram of acceptance. All the circumstances of the transaction point to this conclusion, of which may be mentioned the character of the work contemplated, the distance which the plaintiff was expected to move, with his household effects and his family, the uneasiness of the defendant's manager lest the plaintiff would abandon the work soon after taking it up, and the plaintiff's expressed expectation of a year's employment, to which the defendant's officers made no objection. And in the latter connection we will say that as such of-

ficers, being apprised of the plaintiff's expectation of a year's contract and then knowing that his proposition was based thereon, refrained from expressing themselves in this regard, and thereafter sent the telegram first above mentioned, pursuant to a secret intention that the contract should be subject to termination by them at will or upon a week's notice, then it does not now lie in the mouth of the defendant to assert such intention. We hold that the contract was for a period of one year at a salary of $65 per week. See Smith v. Theobald, 86 Ky. 141, 5 S. W. 394.

2. This brings us to the second question, which in its general form is: Was the contract within the statute of frauds, as being a contract not to be performed within one year from the making thereof? In its ultimate analysis, however, the question here is: What must be deemed to be the date contemplated by the contract for the commencement of its performance? For it is settled that a contract for services which by its terms shows that it is not to be performed or is incapable of performance within one year from the making thereof, is within the statute (Spinney v. Hill, 81 Minn. 316, 84 N. W. 116; White v. Fitts, 102 Me. 240; Chase v. Hinkley, 126 Wis. 75; Lee's Adm'r. v. Hill, 87 Va. 497; Gulport v. Reneau, 94 Miss. 904), while a contract for one year's services commencing on the date of the contract is not within the statute (Sanborn v. Fireman's Ins. Co. 82 Mass. 448); and it is also clear that the writings in the instant case are not sufficient to satisfy the statute. Palmer v. Marquette, 32 Mich. 274; Seymour v. Oelrichs, 156 Cal. 782.

Does, then, the contract here involved show that it was not to be performed, or was incapable of performance, within one year from the date on which it was made, January 31, 1910? The plaintiff contends that it does not so appear, insisting that it must be deemed to be for one year's services beginning January 31, and ending on the same date in the following year. The defendant, on the other hand, contends that the contract was for services beginning February 7. As between these two contentions, we hold with the defendant. That February 7 was the date on which the performance of the contract was to commence is, we think, manifest; and, moreover, as this fact is established by the same evidence which estab-

119 M.—25.

lishes the contractual consensus, the date for the commencement of the performance of the contract must be deemed to appear on its face, or at least to be fixed by its terms. February 7 was the date in the minds of the parties throughout the negotiations, and such date was expressly incorporated in the contract by the telegrams and the letter above quoted. It was the date fixed as giving the plaintiff a reasonable time in which to reach Minneapolis from his home in another state, and the distance he would have to travel in order to reach Minneapolis precluded the possibility of his actually beginning work in that city on the date of his telegram of acceptance. Undoubtedly the parties could have contracted that the plaintiff's services, and his pay, should be deemed to begin January 31, but they did not do this. Nor did they leave the date undetermined. They fixed February 7 as the date when the plaintiff should come and take the position contracted for. Until that date his time was his own, to do with as he pleased, provided only that he reported to the defendant at Minneapolis on February 7.

Could it successfully be contended that the date of the contract was the date for the commencement of its performance, if March 7, or any later date, had been specified as the day on which the plaintiff was to report for work? If not, how, then, can the contention made here prevail. The only difference would be that an employer might more readily agree to pay a week's salary without service, in order to get a desired employee, than he would agree to pay a month's salary, or more, by way of an inducing bonus. But we do not think such an agreement is to be inferred in either case where the only evidence thereof is that the date specified as that upon which the employee is to report for work is subsequent to the date of the contract. If nothing whatever had been said about when the plaintiff was to report for work, there might be room for the plaintiff's contention that a contract is, if possible, to be construed so as to keep it out of the operation of the statute of frauds, and that where no other date is specified the date of the contract will be presumed to be the date for the commencement of its performance; but where, as in this case, the contract indicates the date when the services are to begin, such contentions are irrelevant. Lee's Adm'r. v. Hill,

supra; Chase v. Hinkley, supra; White v. Pitts, supra; Sutcliffe v. Atlantic, 13 R. I. 480; Gulport v. Reneau, supra; Shumate v. Farlow, 125 Ind. 359; Smith v. Theobald, supra. See also note to Okin v. Selider, 138 Am. St. 611, et seq. And it makes no difference that the year is exceeded by only a week, for the doctrine of *de minimis* cannot be invoked to avoid the operation of the statute of frauds. Chase v. Hinkley, supra. "An hour more than the time specified is in law as fatal to the contract as though it were two, five, or a hundred years."

We have considered the cases cited by the plaintiff to sustain his contention that where no date for the commencement of performance is specified, the date of the contract must control, and also those, including Phipps v. McFarlane, 3 Minn. 61 (109), cited as holding that contracts should be construed with a view to sustaining them as against the operation of the statute of frauds; but, in view of our interpretation of the contract here involved, none of these cases are in point. Nor are we called upon either to assent to or to dissent from the doctrines promulgated thereby. We will say, however, that we think a contract should be construed according to the intention of the parties as gathered therefrom, without reference to the consequences, statutory or otherwise; and that if a contract, doubtful as to the date of the commencement of its performance, is held not to be within the statute, it should be so held solely because the statute covers only such contracts as affirmatively show by their terms that they are not to be or cannot be performed within a year, and not because the court deems obnoxious a law which the legislature has seen fit to place in the statutes and has allowed to remain therein for many years. See Cram v. Thompson, 87 Minn. 172, 175, 91 N. W. 483.

The true method of approach to the consideration of the rights here involved is first to determine the question of the existence of the contract, and thereafter to determine the applicability of the statute of frauds thereto. We think that a contract can be established in this case only on the theory that both of the parties understood that its performance was to commence February 7; for if there was no meeting of minds upon that term of the contract, no claim being made that any other time was fixed for the commencement of performance, and it

being apparent that both parties understood that immediate performance or performance within a reasonable time was not contemplated, then no contract was in fact consummated, and the plaintiff would have no standing here whatever. But we are satisfied that there was a meeting of minds to the effect that performance of the contract should begin on February 7 and end one year from that date, with the resulting contract to that effect, to which we must apply the law as declared in the statute of frauds.

By way of answer to some of the claims of plaintiff's counsel to the effect that, as nothing was said by the defendant's officer, during the negotiations which led up to the contract, directly as to when its performance should commence, to which we have already adverted, it must be deemed to commence immediately, we will say that the logical effect of such a conclusion would require a holding that the plaintiff's compensation commenced January 31. We think that it would astonish a business man to learn that, under the law, if he hires an agent or servant at a weekly, monthly, or yearly salary, with the understanding that the employee is to report at some future date, he must, in the absence of an express agreement to such effect, pay the employee, not from the time when the subsequent performance of the service begins, but from the date on which the agreement for the future service is made. It would also, no doubt, equally surprise the servant, under like circumstances, to learn that he was legally entitled to such compensation during the intervening time in which he was engaged in attending to his own affairs. Contracts similar in their general aspect to the one under consideration, are of frequent occurrence; and we are not prepared to adopt a rule of construction which seems to us to be forced, unnecessary, and inequitable.

The contract in this case being, as we have held above, one which contemplated that its performance should commence in futuro and that the services contracted for should continue for one year from the commencement thereof, it follows that, in the absence of writing sufficient to satisfy the statute of frauds, the plaintiff was not entitled in any event to a more favorable judgment than he obtained.

Judgment affirmed.

HOLT, J., who tried the case below, took no part.