### JAMES COSTELLO v. SIEMS-CAREY COMPANY.[1]

May 17, 1918.

No. 20,835.

**Contract — evidence.**

1. Certain correspondence *held* to create a contract between plaintiff and defendant.

**Same — offer and acceptance — time contract.**

2. Defendant wired plaintiff offering employment on a certain railroad construction job. Plaintiff answered asking "How long will it last?" Defendant answered: "Will take about two years to complete." Plaintiff answered: "Will accept your offer." *Held*, to create a time contract. The use of the term "about" gave some leeway and allowed for contingencies, but it did not render time immaterial and did not make the contract one terminable at will.

[1]Reported in 167 N. W. 551.

Action transferred to the district court for Ramsey county to recover $12,107.75 for breach of contract of employment. The answer was a general denial. The case was tried before Dickson, J., who when plaintiff rested granted defendant's motion to dismiss the action. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*W. F. Donohue,* for appellant.

*Stringer & Seymour,* for respondent.

HALLAM, J.

Defendant is a Minnesota corporation, engaged in business as railroad construction contractor. W. F. Carey is its vice-president. Its principal office is in St. Paul. Plaintiff was in defendant's employ for a number of years as superintendent of construction. In March, 1912, defendant wrote plaintiff as follows: "The way things are lining up I think we have cut out a piece of work for you and Mike on the Grand Trunk, if the necessary financial arrangements between yourselves and ourselves can be made. * * * Siems-Carey Company, Per W. F. Carey."

Later in 1912 Carey in a conversation again stated that he expected to have work for plaintiff on the Grand Trunk Pacific in Canada and showed him profiles of the work. In 1913 the following telegrams were exchanged:

"St. Paul, January 14 * * * James Costello, Moccasin, Mont. Mr. Carey is asking whether or not you will be willing to go to British Columbia on some main line standard gauge work riprapping when you have finished at Moccasin * * * Siems-Carey Co."

"Lewistown, January 15 * * * Siems-Carey Co. St. Paul. Your wire date will go to British Columbia if Carey makes satisfactory arrangements. * * * J. Costello."

"St. Paul, January 17 * * * James Costello * * * Mr. Carey wishes to know what arrangements will be satisfactory. * * * Siems-Carey Co."

"Lewistown, January 20 * * * Siems-Carey Co. St. Paul. Your wire 18th. Have Mr. Carey advise what he has to do and what is in it and how long it will last. * * * J. Costello."

"St. Paul * * * January 22 * * * James Costello * * * Present main line work on the Grand Trunk Pacific. Will take about

140 M.—14.

two years to complete. Will increase your present salary $50 per month * * * Answer immediately. * * * W. F. Carey."

"Lewistown * * * January 24 * * * W. F. Carey, St. Paul * * * Will accept your offer and arrange to leave Monday or as soon as you advise where to go. * * * J. Costello."

"St. Paul, January 25 * * * James Costello * * * Remain there until arrival of Claude Siems which will be within next few days. * * * Siems-Carey Co."

In February plaintiff went to work on the Grand Trunk job. It appears that a Canadian corporation, "Siems-Carey Company, Ltd." had the Grand Trunk contract. This corporation had no office in St. Paul. Its "head office" was at Tete Juane Massey and Mile Post 53, British Columbia. The officers of the two corporations were the same. The relation between the companies was evidently close. Claude H. Siems, vice-president of both companies, at first testified defendant carried on work in "Montana and different parts of Canada." Later he corrected this by saying the Canadian corporation had the Grand Trunk contract. In explaining his ignorance of the details of the Canadian work, he said he looked after the work "on this side of the line in Montana" and added "to make things a little clearer, one member of the firm would look after one end, another one after another." Plaintiff learned that a separate corporation had the Canadian contract soon after he went to work in Canada.

In the fall of 1913, plaintiff had some friction with the Grand Trunk superintendent, Mr. McCall, and on October 1, 1913, Carey dictated a letter addressed to himself and plaintiff signed it. It recited that McCall was sending reports to higher officials damaging to the interests of the "Siems-Carey Company," that they were sent in because of personal matters and not because "Siems-Carey Company" had not done everything possible, and concluded, "I have decided in the interests of the company with whom I have worked for so many harmonious years to immediately resign." Plaintiff claims that it was agreed that this should not in fact operate as a resignation and that he was later wrongfully discharged, and sues for breach of contract of employment. The trial court dismissed the case.

Two questions are raised:

1. Defendant claims that the contract, such as it was, was made with the Siems-Carey Company, Limited, the Canadian corporation, and not with the defendant. We do not agree to this. The contract was in writing, and was made up of the telegrams quoted. All were part of one chain. The fair construction of the correspondence seems to us to be that plaintiff was corresponding with defendant, and that insofar as Carey appeared in the transaction he was acting for defendant. Plaintiff had a right to so understand. He could not think Carey was acting for himself. Nowhere is the Canadian corporation mentioned. Plaintiff did not know of its existence. The correspondence was conducted from St. Paul where defendant had an office and the Canadian corporation had none. Carey himself must have thought that he had acted on behalf of defendant in employing plaintiff. In the alleged resignation prepared by him, he did not mention the Canadian corporation, but referred twice to "Siems-Carey Company" and once to "the company with whom I have worked for so many harmonious years," which could mean none other. The fact that when plaintiff arrived in Canada he found himself superintending work for which the Canadian company had a contract, did not shift his contract from one corporation to the other.

2. The question whether plaintiff had a contract for a definite period is not free from doubt. Before plaintiff accepted the proposition he demanded that Carey tell him: (First) "what he has to do;" (second) "what is in it;" and (third) "how long it will last." To these Carey answered: (First) "main line work;" (second) "will take about two years to complete;" and (third) "will increase your present salary $50 per month." Then plaintiff wired acceptance. We think the question "how long it will last" and the answer "will take about two years to complete" made the contract a time contract. He was hired for a job of construction work, and a stipulation that the work would take about two years to complete was a stipulation that his employment would last about two years. McCormick v. Louden, 64 Minn. 509, 67 N. W. 366.

The term "about" has a well-understood meaning. Its use does not render time immaterial. Sanders v. Munson, 74 Fed. 649, 20 C. C. A. 581. Its significance is similar to that of the words "more or less."

It gives some leeway and allows for contingencies, Salmon v. Boykin, Carmer & Co. 66 Md. 541, 7 Atl. 701; Sample v. Pickard, 74 Mich. 416, 42 N. W. 54, but it does not make the contract one terminable at will.

Order reversed.