# N. H. LIDENBERG v. ANCHOR STOVE & RANGE COMPANY, INC.[1]

April 12, 1940.

No. 32,297.

*Hoke, Cobb & Janes,* for appellant.
*Coursolle, Preus & Maag,* for respondent.

HOLT, JUSTICE.

Suit for breach of a contract of employment. Verdict for plaintiff, and defendant appeals from the order denying its motion for judgment *non obstante* or a new trial.

In the trial the attorneys eliminated several issues made by the pleadings, as, for example, the admission by defendant that plaintiff was entitled to recover $245.90 for commissions earned prior to plaintiff's discharge. By the verdict the jury found the discharge to be a breach of the contract of employment and

[1]Reported in 291 N. W. 512.

awarded as damages therefor $3,457.27, which included the sum admitted to be due. There is not much dispute in the oral testimony; the controlling evidence is in writing. If the court was right in construing the contract later in date as merely modifying the one first signed, the verdict should stand as rendered; but if such construction is wrong the verdict should be reduced by all in excess of that admitted by defendant to be due plaintiff.

The situation is this: Under date of January 14, 1938, a contract signed by both parties was entered into. It starts out in the form of a letter confirming a prior verbal agreement and is addressed to plaintiff at Fargo, North Dakota, thus:

"This letter will serve as a memorandum of agreement to confirm your appointment as our Regional Manager in the territory described herein for the calendar year 1938, and to further confirm the several points discussed relative to your operations and duties in the conduct of the Anchor Stove and Range Company's business in said territory.

"TERM OF EMPLOYMENT. This appointment is for the calendar year 1938, and, subject to such changes or modifications as shall be mutually agreed upon from time to time, shall prevail from this date until December 31, 1938, inclusive."

Then follows a description of his territory, naming five states and parts of two states; the compensation; the drawing amount per week; the payment of traveling expenses; other provisions in regard to the contract; and also that defendant company reserves the right to cancel the agreement if plaintiff fails to carry out the company's policy or in the event his conduct of the company's affairs is detrimental to its best interests, such cancellation to be effective 60 days after giving notice thereof to plaintiff. Under date of June 14, 1938, a second document addressed to plaintiff at Minneapolis, Minnesota, was signed by both parties. It begins by referring to a talk on May 14 and continues:

"It is very unfortunate that I did not have the opportunity to draft our new agreement immediately. * * * I am therefore incorporating in this letter the working agreement agreed upon

as in order to avoid any possible mix-up and in the event that any changes might be made it is always best to have our agreement in writing. I am satisfied you understand what is before you and realize the possibilities in the territory assigned to you, and the volume of business we may both expect from it, *therefore this letter upon your accepting and signing and returning a copy to our office will become our final agreement and void all other agreements now in existence.* [Italics supplied.]

"It is mutually agreed that your basis of compensation will be that of a commission basis with no drawing account or traveling expense allowance after May 14, 1938 (except such expense which was necessary for your returning from the factory back into the territory assigned to you)."

Then follows: "Basis of Commission," specifying the new method of compensation, a certain part of which was to accumulate to apply upon the $1,303 overdraft, presumably in plaintiff's drawing account. Other written evidence bearing upon the construction of the signed documents is in this letter, dated May 21 by plaintiff to defendant, stating: "I have not yet received the letter you promised me regarding the *new arrangement."* (Italics supplied.) Under date of May 28, after the interview of May 14, when the new compensation agreement was decided upon and after receipt of copies of the proposed second contract, plaintiff writes defendant, making certain suggestions as to rates of compensation items, wherein is this paragraph:

*"You are right in stating that any agreement should be in writing to avoid mix-ups. Along that line, don't you think that the territory should be mentioned also, and a definite time limit shown. I think you realize that most of the money to be made from this agreement would be made in the last four months of the year, and if I am to spend MY money now to develop the territory, I should have some assurance that I will get the benefit. I am willing to work for Anchor, and I believe we have a wonderful line of equipment, but any proposition is equitable only if it is fair to both parties."* (Italics supplied.)

Then follows this letter dated June 7 from defendant's general manager to plaintiff, which, after stating that he did not have a copy of the second agreement, directed plaintiff to change the same "to read '1 per cent to apply against the overdraft in the case of 7½ per cent commission basis' and forward the signed contract to us." Then comes this paragraph:

*"Reference to the time element, I do not think that is necessary to enter into any definite time clause. As long as a man carries on his work and does a job he need never fear regarding any time element. As long as you do the job you have nothing to worry about. We have found it necessary to reduce other of our men in the same manner that we had in your instance, however the others are taking a step forward and doing a splendid job and I am sure that you can also if you put your heart into it."* (Italics supplied.)

The parts of the written evidence above italicized are the only parts having any bearing on the construction of the documents dated January 14 and June 14.

As we view the appeal, there is no need to consider more than one of the ten assignments of error, namely, the one wherein the court instructed the jury, in substance, that the contract of June 14 was a mere modification of the prior one of January 14 and did not void or supersede the latter.

The interpretation or construction of a written contract is as a rule for the court. It is only where ambiguity exists which may be solved by a jury's finding on disputed facts or questioned surrounding circumstances that a verdict may aid the court in construing a written contract.

Plaintiff asserts that for various reasons the court's challenged instruction is correct. In the contract of June 14 the character of the employment is not given, nor any territory assigned plaintiff. There are other provisions important to such employment as plaintiff had entered by the contract of January 14 entirely absent from that of June 14. The latter deals only with compensation, a subject which by express terms was open to future change or

modification by the first contract. That argument is well sustained by text writers and decisions. 1 Black, Rescission and Cancellation (2 ed.) § 8; 3 Williston, Contracts, § 1826; First Nat. Bank v. St. Anthony & Dakota Elev. Co. 171 Minn. 461, 214 N. W. 288; Uhlig v. Barnum, 43 Neb. 584, 61 N. W. 749; City of Wheeling v. Benwood-McMechen Water Co. 115 W. Va. 353, 176 S. E. 234.

But the difficulty with the foregoing argument is in its inapplicability because of a provision in the contract of June 14, in language so plainly and directly expressing the intention of the parties that no room is left for construction or interpretation. We refer to this provision in the second contract: "therefore this letter upon your accepting and signing and returning a copy to our office will become our final agreement and void all other agreements now in existence." No suggestion is found in the record that the quoted provision was inserted inadvertently or by mistake or with the intent to defraud or deceive. There has been no application for reformation of the document. And obviously no reformation could be granted in view of plaintiff's letter of May 28 above quoted and the reply by defendant's general manager under date of June 7, also above quoted. Plaintiff when tendered the second contract at once noticed and objected to the absence of the time limit therein; and, after having the letter of June 7 expressly stating that defendant insisted that there should be no time limit in the new contract, plaintiff accepts and signs that of June 14. That the parties were at liberty by mutual consent to void and terminate the prior unexpired contract of January 14 is well established. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 1807. So also is the proposition that when the terms of a contract are expressed in language which is clear and unambiguous there is no room for construction or interpretation. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 1817, and cases cited in note 18; Wicker v. Modern L. Ins. Co. 194 Minn. 447, 261 N. W. 441; Wendt v. Wallace, 185 Minn. 189, 240 N. W. 470; *Id.* 188 Minn. 488, 247 N. W. 569; Grimes v. Toensing, 201 Minn. 541,

277 N. W. 236. We think the court erred in construing the contract of June 14 as merely modifying the one of January 14. The provision above quoted in that of June 14 plainly voided and terminated that of January 14.

The order is reversed and the case remanded with direction to enter judgment in favor of plaintiff for only the sum of $245.90 with interest since April 28, 1939, together with taxable costs.