RICHARD BRYNGELSON v. MINNESOTA VALLEY
BREEDERS ASSOCIATION.

114 N. W. (2d) 748.

April 6, 1962—No. 38,291.

*Ray G. Moonan* and *John M. Fitzgerald,* for appellant.
*C. L. Nelson,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for damages for breach of an oral contract of employment between plaintiff, Richard Bryngelson, and defendant, Minnesota Valley Breeders Association, a corporation. The jury returned a verdict in favor of the plaintiff in the sum of $6,250. This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial and from the judgment entered.

On appeal defendant contends (1) that the evidence failed to es-

tablish an oral contract of employment of any definite duration or with any definite provisions therein relating to a bonus claimed by plaintiff; (2) that upon the evidence submitted contract provisions as to salary were severable from those as to bonus so that defendant's anticipatory breach of the latter did not excuse plaintiff from performing provisions relative to the former; and (3) that the trial court erred in charging the jury that it might find a contract extending up to the date of trial, a period of 16 months.

In June 1958 plaintiff and Wallace Miller, manager of defendant acting in its behalf, had certain conversations relating to plaintiff's employment as herdsman and manager of defendant's dairy farm in Le Sueur County. Plaintiff was then employed as manager of Farmers Union Oil Company at Glen Ullin, North Dakota, his compensation averaging $925 per month. He testified that in such conversations Miller had told him that defendant would engage him as herdsman and manager of the dairy farm at an annual salary of $5,500, plus an annual bonus based upon 50 percent of the net income of the farm divided equally between plaintiff and other salaried farm employees of defendant; that in computing such bonus, proceeds from the sale of livestock would be included in gross income; and that in figuring expenses no deductions would be made for the home-raised feed and bedding used for the herd.

The evidence discloses that plaintiff had mailed defendant a written acceptance of the offer of employment as follows:

"July 3, 1958

"Minnesota Valley Breeders Assn.
Wallace Miller Manager
New Prague, Minnesota
"Dear Mr. Miller:
"* * * I should be checked out of here by the first of August if everything goes well.
"I appreciate your holding this position for me and I am really looking forward to getting back on the Dairy.

"Yours very truly,
[Richard Bryngelson]"

Miller testified that at the time of his conversation with plaintiff on June 28, 1958, he had told plaintiff that plaintiff would receive a salary of $5,500 per annum plus a bonus based upon a four-way division of 50 percent of the net income earned on the farm operation; that in computing net income he made it clear to plaintiff by oral statements and by exhibiting to plaintiff a written statement submitted in evidence showing the net income on the farm for the month of May 1958 that a deduction for home-raised feed and bedding equal to 40 percent of the gross income received during the year would be charged as an item of expense; and that he had then further advised plaintiff that only after the operation had reached a point where income from sales of livestock on the farm during the year exceeded the amount expended in the purchase of livestock for improvement or replacement purposes would such excess be included as part of the gross income. He testified that the statement of income for May 1958, which he had then exhibited to plaintiff, had been examined by plaintiff on June 28, 1958. It showed that a charge equal to 40 percent of the gross sales was made for home-raised feed and bedding and that there was no income from sales of livestock included for such month.

Plaintiff admitted that such a statement had been shown to him but asserted that at the time Miller had told him that the statement was of no importance and that for that reason he had not examined it, and hence had not discovered that a charge for home-raised feed and bedding was included therein. In his deposition taken prior to the trial, plaintiff admitted that he had examined several items on the statement.

Plaintiff commenced employment for defendant on September 4, 1958. Just prior thereto he resigned his position at Glen Ullin and moved his family to an apartment in New Prague in close proximity to the farm. Defendant paid for this expense. Plaintiff testified that after working several hours on September 4, 1958, and following a conversation with a previous herdsman, he sought out Miller for a confirmation of his understanding of the employment agreement. On this, his testimony was as follows:

"Q. Was any discussion had at that conversation with reference to the sale of livestock being included in determining the bonus?

"A. Yes, he said that wasn't to be included. He denied ever stating that he was going to include the sale of livestock in the bonus.

"Q. Was any discussion had at that conversation with reference to charge for home-raised feed?

"A. He told me that two-fifths of the sale of milk could be charged for the roughage that was raised on the farm, and I said to him, 'That was not your statement to us when we were in the office at all.'

"Q. And following that conversation what did you do?

"A. I told Mr. Miller I wouldn't work under those conditions.

* * * * *

"Q. Following that you haven't worked for that organization, have you?

"A. No, I haven't."

In a deposition taken prior to the trial, plaintiff testified as to the conversation with Miller on June 28, 1958:

"A. * * * while we were talking about the position, I asked him, 'How do you arrive at the cost of the roughage or feed for the herd being that you raise most of your feed here?'

"Q. What did he say?

"A. Well, he said, 'That's very cheap. We have an abundance of roughage, and the way we handle that is, we charge, see, 4% interest for the buildings and equipment and 3% depreciation on buildings and equipment.' He says, 'That is about all we have to charge on roughage being we own the land. * * *' "

Miller's version of the final conversation with plaintiff was as follows:

"* * * Mr. Bryngelson said to me * * *, 'Wally, we have talked this matter over with the family, and we have decided not to accept the job.' He said, 'I assume I made a mistake in accepting it in the first place.'

* * * * *

"Q. What if anything did you say in response to Mr. Bryngelson's statements about quitting?

"A. I was really upset about it, and I said so; and I also said, 'Does that include the son and the son-in-law,' that they would not work?

"Q. What if anything did they say?

"A. They looked at each other and they both said, 'Yes.'

\* \* \* \* \*

"Q. Was anything further said out there that you can recall?

"A. Nothing. Nothing that would directly relate to the job."

Evidence was submitted by defendant that on the basis of research the D.H.I.A.[1] had established that for home-raised feed and bedding costs a charge of 50 percent of the gross sales was reasonable.

The evidence indicated that after he left this employment plaintiff's earnings totaled $3,415 up to the date of the trial. Of this amount approximately $2,435 was earned within a year from September 4, 1958.

At the close of the testimony defendant moved for a directed verdict on the grounds that it appeared as a matter of law that plaintiff had failed to prove a contract definite and certain in its terms, particularly as to its duration; and that within a few hours after he had started work plaintiff voluntarily terminated the contract so that no liability could attach to defendant in connection therewith. The motion was denied.

The court charged the jury as follows:

"If you should find for the plaintiff, the measure of damages would be the loss to the plaintiff between the salary he was promised and the salary or wages since earned during the duration of the contract, but not beyond the time of the trial of this case, and it will be for the jury to determine the extent and duration of the contract in question with reference to the damages, if you should find for the plaintiff, but said duration of the contract shall not extend beyond the date of the trial of this action according to the time limit you find under the evidence and testimony submitted during the trial of the case.

"\* \* \* in making a determination of the damages \* \* \* any salary or wages that the plaintiff has earned in other work since the termination or breach of the contract would be in mitigation of any damages he would be entitled to receive, \* .\* \*."

---

[1]Dairy Herd Improvement Association.

At the close of the court's instructions, the following occurred:

"[The court:] Now, are there any additions, modifications, corrections, or exceptions on the part of counsel?

\* \* \* \* \*

"Mr. Moonan [counsel for defendant]: I assume that the request made by the Court now relates to minor inaccuracies, but I would not want to waive the point we made with reference to the duration of the contract, there being no proof in this case, and there being no evidence in the case of the duration the submitting of the issue of the duration is not in our view or approach to it a proper issue for the jury, but the Court has already ruled on that."

■ It is clear that the *terms* of any employment contract which came into existence between plaintiff and defendant must have arisen out of the conversation between plaintiff and Wallace Miller, representing defendant, on June 28, 1958. Before that, no statements as to terms of employment were made by either party. Afterwards, on July 3, plaintiff wrote defendant that he would report for work August 1. This letter made no reference to the terms of employment, and it must be assumed that therein plaintiff accepted the terms as they had been expressed at the June 28 meeting. Accordingly, July 3, 1958, became the effective date of any employment agreement between the parties, and it is undisputed that the earliest commencement date thereof was August 1, 1958.

■ Plaintiff's version of the conversation of June 28, 1958, is that therein he was offered employment by defendant on the basis of $5,500 per year plus a percentage of the net profits. Neither he nor Miller testified as to the duration or length of time for such employment. Defendant's operating statement for May 1958, which was exhibited to plaintiff at this meeting to establish a basis for possible profit, clearly indicated defendant's custom of computing earnings or losses on a monthly basis. From the evidence, the jury might conclude that there had been no meeting of minds, or that if there was, that no more than a monthly employment agreement was intended. Other facts and circumstances shown, however, could support a finding that the parties intended an employment agreement of one year's duration. Thus, the

facts that plaintiff's salary was fixed on an annual basis; that he gave up a position with higher earnings in North Dakota and moved to New Prague to accept defendant's offer; and that both parties believed that plaintiff's training and experience would result in reducing defendant's expenses, could sustain a finding that employment for one year was intended by the parties. Under such evidence, it was for the jury to determine whether a contract came into existence, and if so, whether the parties intended a contract on a monthly basis, or one of the duration of one year from the commencement of employment.[2] Fountain v. Oreck's Inc. 245 Minn. 202, 71 N. W. (2d) 646; Horn v. Western Land Assn. 22 Minn. 233; see, Magnuson v. Stevens Brothers, 146 Minn. 38, 177 N. W. 929; Costello v. Siems-Carey Co. 140 Minn. 208, 167 N. W. 551; O'Donnell v. Daily News Co. 119 Minn. 378, 138 N. W. 677; Annotation, 100 A. L. R. 834. Thus, as stated in Wallace v. Joseph Dixon Crucible Co. 223 Minn. 162, 165, 25 N. W. (2d) 465, 467:

"* * * The reasonable implication of the language ["your annual compensation" and "[y]our maximum compensation, on any amount of net sales in any one calendar year"] * * * admits of a dual interpretation. The commission percentage is specified on a certain sales volume 'per annum.' The words 'per annum' may have been used only to indicate a restricted computation period, so that in no event could the sales volume be calculated for compensation purposes for a longer period than one year or, on the other hand, to indicate that the compensation percentage on sales volume quotas should not * * * be apportioned to a period shorter than a year."

■ The evidence submitted, however, would not support a verdict determining that plaintiff's employment might have extended up to a period of 16 months as the court charged the jury. None of the decisions cited above hold that evidence of the type described will support an agreement for a greater period than that upon which the basic

---

[2]The situation is distinguishable from those where other evidence is indicative of an employment agreement terminable at will. Lidenberg v. Anchor Stove & Range Co. Inc. 207 Minn. 341, 291 N. W. 512; Steward v. Nutrena Feed Mills, Inc. 186 Minn. 606, 244 N. W. 813.

salary is based, be it for a week, a month, or a year, unless other factors or circumstances would support such a finding. Annotation, 100 A. L. R. 834; Godson v. MacFadden, 162 Tenn. 528, 39 S. W. (2d) 287. It must follow that the court's instruction, to which defendant excepted, based upon a 16-month contract, afforded the jury an incorrect basis in determining plaintiff's damages and hence constituted reversible error requiring a new trial.

■ There is also serious doubt as to whether the evidence submitted would sustain a recovery based upon a percentage of defendant's profits for the ensuing year. No instruction was given to the jury as to how it should arrive at a determination of this item. The evidence submitted to support this claim consisted of defendant's monthly earnings statements for that period. These clearly indicate that a charge equal to 40 percent of the gross sales had always been made for home-grown feed and bedding. Since the profit claimed by plaintiff was arrived at for the most part by the elimination of this item; since it was contemplated by all parties that plaintiff's bonus was to be the result of his efforts in reducing expenses and increasing production; since the efforts of his successor brought about the increased earnings; and since there is nothing to indicate whether items such as plaintiff's contemplated salary, defendant's state and Federal income taxes, and other expenses not referred to in any of the conversations between the parties were to be deducted, it seems clear that any finding regarding the bonus was based upon evidence far too speculative and conjectural to be sustained. Miller v. Reiter, 155 Minn. 110, 192 N. W. 740; Halin v. Dahlgren, 157 Minn. 100, 195 N. W. 765; Rochester Bread Co. v. Rapinwax Paper Co. 193 Minn. 244, 258 N. W. 302. By this we do not intend to divert from the well-established rule that contemplated profit can be recovered even though not established with mathematical precision, 5 Dunnell, Dig. (3 ed.) § 2535, and cases cited, but rather to indicate that the evidence presented here is too uncertain and indefinite to come within this principle.

■ In conclusion, it may be said that there are other issues which should be determined at any retrial of this litigation. These would include whether there was actually a meeting of the minds as between the parties or whether a mutual mistake nullified consummation of any

284

contract between them, and whether, if the contract was as claimed by plaintiff, defendant's anticipatory breach thereof resulted in plaintiff's election to treat it as *rescinded* rather than breached, and accordingly limited his right of recovery to restitution rather than future damages. Stark v. Magnuson, 212 Minn. 167, 2 N. W. (2d) 814; Engel v. Mahlen, 153 Minn. 1, 189 N. W. 422; Kineto Machine Co. v. Ugland, 146 Minn. 44, 177 N. W. 1018; Restatement, Contracts, § 410, *comment b*, *illustrations* 1 and 3.

Order reversed and new trial granted.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.